UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 23-cv-60800

GBB DRINK LAB, INC.,

    Plaintiff,

v.

FSD BIOSCIENCES, INC. and
FSD PHARMA, INC.,

    Defendants.
_____/

## **COMPLAINT**

Plaintiff, GBB DRINK LAB, INC., by and through undersigned counsel, Heitner Legal, P.L.L.C., files this Complaint against Defendants FSD BIOSCIENCES, INC. and FSD PHARMA, INC. and states as follows:

## **PRELIMINARY STATEMENT**

This is an action for Defendants' blatant material breach of a Mutual Nondisclosure Agreement and misappropriation of trade secrets, which has and continues to cause irreparable harm to Plaintiff, which has been valued, as of August 30, 2022 (prior to the misappropriation and material breach) at $53,047,000.

## **PARTIES**

1. Plaintiff, GBB DRINK LAB, INC. ("GBB"), is an active Florida for-profit corporation, with a principal address of 2505 Provence Circle, Weston, FL 33327, which has formulated the world's first rapid blood alcohol detoxification product.

2. Defendant, FSD PHARMA, INC. ("FSD PHARMA") is an Ontario, Canada-based publicly traded biotechnology company (NASDAQ: HUGE) (CSE: HUGE) (FRA: 0K9A) organized under the Business Corporations Act (Ontario) with a principal address of 199 Bay St., Suite 4000, Toronto, ON, M5L 1A9, Canada. Zeeshan Saeed is FSD PHARMA's founder, president, and executive co-chairman of the board.

3. Defendant, FSD BIOSCIENCES, INC. ("FSD BIOSCIENCES") is a Delaware company and wholly-owned subsidiary of FSD PHARMA, focused on pharmaceutical research and development, with a principal place of business at 3494 Progress Drive, Bensalem, PA 19020.

## JURISDICTION AND VENUE

4. This action is a civil action over which this Court has original jurisdiction under 18 U.S.C. § 1836(c) based on Defendants' misappropriation of trade secrets and 28 U.S.C. § 1332(a), because there is diversity of citizenship among the parties and the amount in controversy exceeds the sum of $75,000, exclusive of costs and attorneys' fees. Plaintiffs' officers/directors, Miklos Gulyas is a citizen of the State of Florida, Jarrett Boon is a citizen of the State of Arizona, Brad Greer is a citizen of the State of Texas, and Josh Wagner is a citizen of the State of California. FSD PHARMA's founder, president, and executive co-chairman of the board, Mr. Saeed, is an individual residing at 3688 Stratton Woods Court, Mississauga, ON, L5L 4V2 and its interim-CEO, Anthony Durkacz is an individual residing at 3006-2045 Lakeshore Boulevard, West Toronto, ON M8V 2Z6. FSD BIOSCIENCES, a Delaware-based corporate entity, is wholly-owned by FSD PHARMA. Thus, there is thus complete diversity between the parties under 28 U.S.C. § 1332.

5. Pursuant to Fla. Stat. § 48.193, this Court has personal jurisdiction over Defendants, because at all relevant times Defendants conducted, engaged in, and carried on business in Florida,

which includes but is not limited to appearing at meetings with GBB in the State of Florida surrounding contemplated transactions and delivery of proprietary information, which is at issue in this matter.

6. The July 5, 2022 "Mutual Nondisclosure Agreement" between GBB and Defendants (attached hereto as **Exhibit "A"** and referred to herein as the "Mutual NDA") is a material element of the dispute. Said document indicates that it "shall be governed by the laws of the State of Florida without regard to the conflicts of law provisions thereof, and the parties consent to the exclusive jurisdiction and venue of the state and federal courts located in Broward County, Florida and agree to waive all objections to personal jurisdiction, venue and *forum non conveniens*."

7. Any and all conditions precedent to the filing of this action have been performed or have been waived.

## GENERAL ALLEGATIONS

8. GBB spent roughly ten years and more than $1 million to research and develop the world's first formulated drink that aids in rapid blood alcohol detoxification, utilizing a proprietary formula that accelerates the process of converting alcohol to sugar in the body. By enhancing the metabolic pathways that facilitate this process, the formula can help the body clear alcohol much faster than normal.

9. Defendants, conducting business in the biopharmaceutical industry, were interested in expanding their portfolio of innovative assets and expressed what was believed to be a sincere desire to attain proprietary information from GBB based on a promise that Defendants would keep such information confidential and not reverse engineer it, disassemble it, or decompile it.

10. On or about June 14, 2022, GBB and Defendants met at the restaurant Steak Social in the Cayman Islands. Mr. Durkacz, Fernando Cugliari, and Joe Romano were in attendance on behalf

of Defendants. Mr. Cugliari was the first person to test GBB's proprietary drink that evening and was very much impressed by how quickly it worked. Mr. Durkacz also tested the proprietary drink and immediately desired to discuss a business transaction.

11. On or about June 16, 2022, Mr. Durkacz, on behalf of the Defendants, called GBB and expressed an interest in FSD PHARMA acquiring GBB and its assets.

12. On July 5, 2022, GBB and Defendants entered into the Mutual NDA with the stated purpose that the parties wished to explore a business opportunity of mutual interest and benefit and, in connection with same, each party may disclose to the other certain confidential, technical, and business information that the disclosing party desires the receiving party to treat as confidential.

13. The parties understood that the business opportunity of mutual interest and benefit revolved around GBB's "technology and know-how for a present invention that relates to a composition, and methods of using the composition, for minimizing the harmful effects associated with alcohol consumption" and acknowledged that GBB's "composition contains a plurality of ingredients, which when combined have the unexpected effect of increasing one or more metabolic pathways in the individual." As such, the parties included the quoted language in the definition of "Confidential Information"

14. The Mutual NDA's definition of "Confidential Information" also included, without limitation, business plans, designs, engineering information, inventions, marketing plans, processes, products, product plans, research, specifications, and trade secrets.

15. GBB would not have disclosed any of the aforesaid Confidential Information to Defendants without Defendants' assurance that the information would be kept in the strictest confidence and not be used by Defendants outside the very limited "Permitted Use" as defined in the Mutual NDA.

16. Defendants agreed that they shall only use the aforesaid Confidential Information for the purpose of evaluating the parties' business opportunity of mutual interest and benefit and that Defendants shall not reverse engineer, disassemble or decompile anything that embodied GBB's Confidential Information without express written consent from GBB. Such express written consent was never provided by GBB to Defendants.

17. Given that FSD PHARMA is a Canada-based corporation and FSD BIOSCIENCES is a wholly-owned subsidiary of that Canada-based corporation, the parties further agreed that Defendants would not remove or export from the United States or re-export any of GBB's Confidential Information or any direct product thereof.

18. GBB knew that it possessed extremely valuable Confidential Information on the Effective Date of the Mutual NDA and understood that a continued breach of the Mutual NDA would cause irreparable harm. As such, GBB and the Defendants agreed, as codified in the Mutual NDA, that monetary damages would be inadequate to compensate GBB for any breach by Defendants and, accordingly, Defendants agreed and acknowledged that any such breach or threatened breach of the Mutual NDA would cause irreparable injury to GBB and that, "in addition to any other remedies that may be available, in law, in equity or otherwise, GBB shall be entitled to obtain injunctive relief against the continuation of such breach or the threatened breach of the Mutual NDA, without the necessity of proving actual damages or posting bond."

19. On August 5, 2022, Lakshmi P. Kotra, Ph.D., founder and CEO of Lucid Psycheceuticals Inc., a subsidiary of FSD PHARMA, wrote to GBB, copying Messrs. Dukacz and Saeed, confirming a meeting with GBB officers/directors the prior day, and stated, "we would like to understand the product, IP, and other details as a due diligence exercise." Included in Dr. Kotra's eight requests was for GBB to deliver: (i) a list of ingredients and their quantities of the

composition that intends to minimize the harmful effects associated with alcohol consumption; (ii) the manufacturing process for the product and the scale at which it was last executed; (iii) any quality-related documentation; and (iv) any experimental data, such as in vitro, in vivo or clinical studies that were conducted with the products on their ability to reduce blood alcohol content. Dr. Kotra asked that GBB set up a data room and provide access to FSD PHARMA and suggested that, alternatively, FSD PHARMA could set up a data room where GBB was able to drop all the files for security so FSD PHARMA's team could review, adding that FSD PHARMA would get its regulatory, intellectual property, and clinical teams on to this as soon as possible. GBB, relying on the existence of the Mutual NDA, proceeded to supply Dr. Kotra and Defendants with the requested information and material.

20. On or before August 9, 2022, Defendants expressed what was believed to be a sincere interest in FSD PHARMA purchasing GBB and all its assets. On August 9, 2022, Mr. Gulyas introduced Mr. Durkacz to GBB's legal counsel, Mr. Saeed was added to the email chain, and the parties engaged in a group call to further discuss the potential acquisition deal terms.

21. On August 22, 2022, as potential acquisition discussions continued and Defendants expressed even more interest in GBB's composition, Defendants requested and received from GBB (i) copies of GBB's patents; (ii) employment agreements for Mr. Boon, Josh Wagner, and David Sandler of GBB; and (iii) GBB's minutes from meetings held on May 15, 2021 and May 27, 2022.

22. On October 19, 2022, Dr. Kotra asked GBB, with Messrs. Durkacz and Saeed copied, to send ten bottles containing GBB's proprietary formula, still being researched and under development, to an address in North Tonawanda, New York. Again, GBB only considered

complying with this request based on the existence of the Mutual NDA, given that the product contained highly proprietary and confidential material that had not yet been released to the public.

23. On October 26, 2022, as acquisition discussions picked up between GBB and FSD PHARMA, legal counsel for FSD PHARMA sent an email to GBB's legal counsel with a proposed redlined "Asset Purchase Agreement." The email included a "Work Product Assignment Agreement" as an attachment.

24. On November 7, 2022, Messrs. Boon, Gulyas, Wagner, and Sandler (all on behalf of GBB) traveled to Addison, Texas to meet with Mr. Durkacz and Dr. Kotra for the sole purpose and intent of meeting Defendants' team at GBB's manufacturing plant and so that GBB could demonstrate the precise methods, exact ingredients, techniques, formulas, and equipment used to manufacture GBB's proprietary drink.

25. On November 15, 2022, GBB engaged new counsel to negotiate the terms of the potential purchase of GBB and all its assets.

26. GBB and FSD PHARMA continued negotiating documents related to the potential purchase of GBB and all its assets through at least December 12, 2022. The parties never came to an agreement on the FSD PHARMA's potential purchase of GBB and all its assets.

27. On February 14, 2023, after GBB and Defendants met over the span of seven months, exploring a business opportunity of mutual interest and benefit revolving around GBB's technology and know-how for a present invention that relates to a composition and methods of using the composition for minimizing the harmful effects associated with alcohol consumption, Defendants announced the launching of a new research and development program targeting unmet medical needs for alcohol misuse (the "Feb. 14, 2023 Press Release").[1]

---

[1] *See* https://fsdpharma.com/fsd-pharma-launches-a-new-research-and-development-program-targeting-unmet-medical-needs-for-alcohol-misuse/.

28. The Feb. 14, 2023 Press Release was strategically published to coincide with the announcement that FSD PHARMA had agreed to issue common share purchase warrants to purchase 800,000 shares of the company and that warrants would have a 13-month term with an exercise price ranging from $1.50 USD to $4.50 USD.

29. Upon information and belief, Defendants publicly announced the misappropriation of GBB's trade secrets to current and prospective investors without revealing the underlying misappropriation, to raise capital and drive up the price of FSD PHARMA's publicly traded stock.

30. On February 23, 2023, GBB emailed Messrs. Saeed, Durkacz, Kotra and others, making direct reference to the Feb. 14, 2023 Press Release and the Mutual NDA, highlighting that GBB and Defendants had worked closely together for seven months performing due diligence, and reminding Defendants that GBB had provided numerous trade secrets to Defendants protected by the Mutual NDA. GBB asked that Defendants provide a few days/times that work to schedule a conference call in order to obtain a better understanding and hear firsthand from Defendants as to their plans.

31. On February 28, 2023, Defendants announced that entrepreneur Kevin Harrington, of television show *Shark Tank* fame, joined the FSD PHARMA Advisory Board, and Defendants' press release quoted Mr. Harrington as stating, "We have all seen the detrimental effects associated with irresponsible use of alcohol. It is an area ripe for innovation and I welcome the opportunity to participate in FSD PHARMA's goal to make important societal impact, particularly in that area."[2]

---

[2] *See* https://www.businesswire.com/news/home/20230228005660/en/Original-%E2%80%9CShark%E2%80%9D-and-Iconic-Entrepreneur-Kevin-Harrington-Joins-FSD-Pharma-Advisory-Board.

32. Upon information and belief, Mr. Harrington was unaware, at the time, that Defendants had misappropriated GBB's trade secrets with the intention of persuading iconic entrepreneurs such as Mr. Harrington to join FSD PHARMA's Advisory Board and invest in the Defendants. The following is a screen shot from Mr. Harrington's official Instagram page, where he promotes FSD PHARMA's "breakthrough product," which misappropriates GBB's trade secrets.



33. GBB is very concerned about the irreparable harm that Defendants' association with iconic entrepreneurs such as Mr. Harrington will cause for GBB as it continues to conduct research surrounding the composition and methods of using the composition for minimizing the harmful effects associated with alcohol consumption and ultimately launch a product that accomplishes

same, particularly based on the statement published in Defendants' press release that, "Mr. Harrington will be working to open up his vast rolodex to expand the reach of the company and brands within, including both beverage industry and general business connections," and "The company and Mr. Harrington also plan to expand the high-powered Advisory Board for the Company, by bringing in other high profile business minds."

34. Here again, with the announcement that Mr. Harrington had joined FSD PHARMA's Advisory Board and fourteen days after issuing the Feb. 14, 2023 Press Release, FSD PHARMA announced a new grant of stock options to certain employees to purchase up to an aggregate of 500,000 Class B subordinate voting shares and issue common share purchase warrants to purchase 1,000,000 shares of the company. Upon information and belief, FSD PHARMA was seeking to exploit the public as much as possible while it remained unaware of the underlying misappropriation of GBB's trade secrets.

35. On March 1, 2023, GBB and Defendants participated in a conference call and, during the call, Defendants expressed that they would not cease and desist from moving forward with their plans to launch a product that is derived, at least in part, from the trade secrets Defendants received from GBB, which was delivered by GBB to Defendants under the terms of the Mutual NDA.

36. On March 30, 2023, GBB's concerns were validified and intensified when Defendants announced that former Celsius Holdings CEO Gerry David, who helped Celsius' fitness drink experience a "global sales explosion" and was responsible for an "influx of capital from notable strategic investors," was added to FSD PHARMA's Advisory Board (the "Mar. 30, 2023 Press Release").[3] The Mar. 30, 2023 Press Release included a quote from Mr. David, who stated, "I have seen countless products throughout my career and I can honestly say that I have never seen

---

[3] *See* https://financialpost.com/pmn/press-releases-pmn/business-wire-news-releases-pmn/fsd-pharma-adds-former-celsius-holdings-ceo-gerry-david-to-board-of-advisors.

anything as unique and disruptive as the product FSD PHARMA is developing to counteract alcohol intoxication and misuse," and added that he welcomes the opportunity to lend any resources and experiences he has "to help achieve the goal of a commercialized product in the future."

37. Upon information and belief, Mr. David was unaware, at the time that he uttered such statements, that Defendants had misappropriated GBB's trade secrets with the intention of persuading iconic entrepreneurs such as Mr. David to join FSD PHARMA's Advisory Board and invest in the Defendants.

38. On April 14, 2023, GBB sent Defendants a cease-and-desist demand letter, highlighting that the study announced by Defendants in the Feb. 14, 2023 Press Release was the direct result of Defendants' receipt of confidential and proprietary information from GBB and demanded that Defendants immediately cease-and-desist the use of all confidential and/or proprietary information provided by GBB relating thereto. Defendants have refused to comply.

39. Defendants have failed to comply with the terms of the Mutual NDA but recognized its validity and enforceability by Defendants' own actions, including by way of a September 28, 2022 email from Mr. Durkacz to GBB, copying Mr. Saeed, and asking GBB to treat a document attached therewith as confidential under the Mutual NDA.

### COUNT I – BREACH OF CONTRACT UNDER THE MUTUAL NDDA (Against Defendants)

40. GBB repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

41. GBB and Defendants voluntarily entered into the Mutual NDA and Defendants have materially breached the Mutual NDA by failing to keep confidential the Confidential Information

supplied by GBB and by using the Confidential Information outside the very limited "Permitted Use" as defined in the Mutual NDA.

42. GBB performed all of its duties and obligations under the Mutual NDA.

43. GBB has suffered damages and continues to suffer increasing damages as a result of Defendants' material breach.

**COUNT II – TEMPORARY AND PERMANENT INJUNCTION UNDER THE MUTUAL NDA (Against Defendants)**

44. GBB repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

45. Temporary, preliminary and permanent injunctive relief is requested pursuant to the Mutual NDA, 18 U.S.C. § 1836(b)(3)(A), and/or Rule 65 of the Federal Rules of Civil Procedure.

46. By reason of past and continuing misappropriation of GBB's trade secrets by Defendants, GBB has and will continue to suffer irreparable harm for which there is no adequate remedy at law.

47. The harm that would continue to beset GBB if the Court denies injunctive relief greatly outweighs any potential harm to Defendants if injunctive relief is entered.

48. GBB has a clear legal right to prevent Defendants from continuing their improper and unlawful activities. Furthermore, Defendants have already agreed, understood, and acknowledged that Defendants' breach of the Mutual NDA will cause irreparable injury to GBB and that GBB shall be entitled to obtain injunctive relief against the continuation of such breach or threatened breach of the Mutual NDA, without the necessity of proving actual damages or posting bond.

49. GBB has a substantial likelihood of success on the merits and the entry of an injunction will not be contrary to the public health, safety and welfare.

50. Unless Defendants are restrained and enjoined from launching the "breakthrough product" (as referred to by Mr. Harrington), which misappropriates GBB's trade secrets and Confidential Information that GBB provided to Defendants under the Mutual NDA, GBB will continue to be irreparably harmed in the conduct of its business

### COUNT III – MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S. CODE § 1836 (Against Defendants)

51. GBB repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

52. Defendants received GBB's confidential, proprietary, and trade secret information for their own benefit and to GBB's detriment.

53. 18 U.S.C. § 1831, *et seq.*, also referred to as the "Defend Trade Secrets Act," allows for a private civil action (in addition to the criminal sanctions identified in 18 U.S.C. § 1832) to be brought by the owner of a misappropriated trade secret "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

54. Defendants misappropriated GBB's confidential and proprietary information, which constitutes trade secrets within the meaning of the Defend Trade Secrets Act. 18 U.S.C. § 1839(3).

55. Defendants are utilizing the confidential and proprietary information at issue herein in its provision, marketing, and promotion of services across state lines in interstate commerce and its acts in furtherance of the offenses have been committed in the United States. Additionally, FSD BIOSCIENCES, wholly-owned by FSD PHARMA, is organized under the laws of the State of Delaware.

56. GBB took prudent, reasonable, and explicit steps to maintain the secrecy of the confidential and proprietary information described herein by limiting its dissemination and by refusing to provide any such information to Defendants until after Defendants became bound by the terms

contained in the Mutual NDA. GBB expressly instructs its officers, directors, and employees to refrain from disclosing confidential, proprietary, and trade secret information to anyone except as required by their employment or as permitted under the Mutual NDA.

57. Defendants unlawfully misappropriated trade secrets belonging to GBB in violation of the Defend Trade Secrets Act and Defendants knew or should have known that the Confidential Information and trade secrets obtained by Defendants constituted trade secrets belonging to GBB and that Defendant was not authorized to use the Confidential Information outside of the limited Permitted Use specified in the Mutual NDA. As stated in the Mutual NDA, all of GBB's Confidential Information shall remain the sole property of GBB and nothing in the Mutual NDA is intended to grant any rights to Defendants "under any patent, copyright, trade secret or other intellectual property right of the other party," nor shall the Mutual NDA grant Defendants any rights in or to GBB's Confidential Information except as expressly set forth therein.

58. Defendants' misappropriation of the Confidential Information and trade secret information was intentional, knowing, willful, malicious, and fraudulent.

59. Upon information and belief, Defendants have used and, if not enjoined, will continue to use the confidential trade secret information for their own benefit as well as to GBB's detriment.

60. As a direct and foreseeable result of Defendants' misappropriation of trade secrets, GBB has suffered economic and irreparable harm, injuries, and damages, and will continue to suffer same, including but not limited to, loss of market share, injury to business reputation and goodwill, and attorneys' fees and costs. In addition to injunctive relief, GBB is entitled to recover damages, including exemplary damages and attorney's fees and costs, based on Defendants' wrongful acts.

**COUNT IV – MISAPPROPRIATION OF TRADE SECRETS UNDER FLORIDA UNIFORM TRADE SECRETS ACT (Against Defendants)**

61. GBB repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

62. Defendants are aware of GBB's policies and procedures regarding the safeguarding of proprietary and trade secret information, particularly regarding GBB's technology and know-how for a present invention that relates to a composition, and methods of using the composition, for minimizing the harmful effects associated with alcohol consumption, which was confirmed by the drafting and execution of the Mutual NDA as a precondition for GBB disclosing such proprietary and trade secret information to Defendants.

63. Defendants have improperly misappropriated GBB's Confidential Information and trade secret information without authorization, in order to unlawfully compete with GBB, and has disseminated promotional and advertising information to all fifty states, including the State of Florida, for a multitude of business purposes, including but not limited to generating interest among potential purchasers of FSD PHARMA common stock who reside in the State of Florida.

64. Defendants compete and seek to compete against GBB in Florida by using the Confidential Information with the purpose and intent of damaging GBB and benefiting Defendants.

65. The Confidential Information wrongfully misappropriated by Defendants includes trade secrets as defined under Florida law. Specifically, GBB's Confidential Information meets the definition of trade secrets set forth in the Florida Uniform Trade Secrets Act, FLA STAT. §§ 688.001-009.

66. GBB took reasonable steps to maintain the secrecy of the Confidential Information as detailed herein.

67. Defendants knew or should have known that the Confidential Information and trade secret information utilized by Defendants constituted trade secrets that Defendants was not authorized to use outside the limited Permitted Use as defined in the Mutual NDA.

68. Upon information and belief, Defendants have used and will continue to use GBB's trade secrets for Defendants' benefit, and the anticipated continued use of said trade secrets is a misappropriation of trade secrets in violation of Florida law, causing great and irreparable injury to GBB, including but not limited to, loss of relevant market share, injury to business reputation and goodwill, and attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, GBB respectfully requests that the Court enter judgment on its behalf in an amount to be proven at trial in this matter, but for no less than $53,047,000.00, along with its fees, costs, prejudgment interest, punitive damages, temporary injunctive relief, preliminary injunctive relief, permanent injunctive relief, and other such relief as the Court deems necessary, just and proper, including but not limited to restraining and enjoining all other persons and corporate entities who are in active concert or participation with Defendants from directly or indirectly disclosing or making any use of any Confidential Information misappropriated by Defendants. GBB's request for relief specifically includes the contemplated relief set forth in 18 U.S.C. § 1836(b)(3)(B) and FLA STAT. § 688.004(1), which entitles GBB to damages for actual loss caused by the misappropriation of the trade secrets and damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss or, in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable

royalty for the misappropriator's unauthorized disclosure or use of the trade secrets, as well as exemplary damages under 18 U.S.C. § 1836(b)(3)(C) FLA STAT. § 688.004(2).

Dated: May 1, 2023

Respectfully submitted,

**HEITNER LEGAL, P.L.L.C**
*Counsel for Plaintiff*
215 Hendricks Isle
Fort Lauderdale, FL 33301
Phone: 954-558-6999
Fax: 954-927-3333

By: _____

DARREN A. HEITNER
Florida Bar No.: 85956
Darren@heitnerlegal.com