# GBB DRINK LAB, INC

## MUTUAL NONDISCLOSURE AGREEMENT

This Mutual Nondisclosure Agreement (the "*Agreement*") is made and entered into as of the date last signed (the "*Effective Date*") by and between GBB Drink Lab, Inc., a Florida Corporation, and the other party set forth in the signature block below. As used herein, the party disclosing Confidential Information is the "*Disclosing Party*" and the party receiving the Confidential Information is the "*Recipient*."

1.  *Purpose*. The parties wish to explore a business opportunity of mutual interest and benefit (the "*Opportunity*") and in connection with the Opportunity, each party may disclose to the other certain confidential technical and business information that the Disclosing Party desires the Recipient to treat as confidential.

2.  *Confidential Information*. "*Confidential Information*" means any information previously or hereafter disclosed by or on behalf of the Disclosing Party to the Recipient, either directly or indirectly, in writing, orally or by inspection of tangible objects, including, without limitation, business plans, customer data, customer lists, customer names, designs, documents, drawings, engineering information, financial analysis, hardware configuration information, inventions, market information, marketing plans, processes, products, product plans, research, services, specifications, software, source code, trade secrets or any other information that the Disclosing Party identifies as "confidential," "proprietary" or some similar designation or that reasonably appears to be confidential or proprietary because of legends or other markings, the circumstances of disclosure, or the nature of the information itself. Disclosing Party also identifies as "confidential," and "proprietary"  and also owns certain technology and know-how for a present invention that relates to a composition, and methods of using the composition, for minimizing the harmful effects associated with alcohol consumption. The composition contains a plurality of ingredients, which when combined have the unexpected effect of increasing one or more metabolic pathways in the individual. Confidential Information also includes information disclosed to the Disclosing Party by third parties and all notes, reports, analyses, compilations, studies and other materials prepared by the Recipient or its representatives (in whatever form maintained, whether documentary, electronic or otherwise) containing, reflecting or based upon, in whole or in part, any such information or reflecting or based upon, in whole or in part, any such information or reflecting such party's review or view of the Disclosing Party or the Confidential Information. Confidential Information shall not, however, include any information which (i) is now, or hereafter becomes, through no act or failure to act on the part of the Recipient, generally known and made generally available in the public domain; (ii) or becomes available to the Recipient on a non-confidential basis from a source other than the Disclosing Party, which source is not known by the Recipient after reasonable investigation to be subject to a contractual, legal or fiduciary obligation prohibiting such disclosure, in each case as evidenced by the written records of the Recipient; or (iii) is independently developed by the Recipient without use of or reference to the Disclosing Party's Confidential Information, as shown by documents and other competent evidence in the Recipient's possession.

3.  *Permitted Use*. The Recipient agrees that it shall use the Disclosing Party's Confidential Information solely for the purpose of evaluating the Opportunity and shall not reverse engineer, disassemble or decompile any prototypes, software or other tangible objects which embody the Disclosing Party's Confidential Information unless express written consent for such actions is received from the Disclosing Party. If such a prohibition is not permitted pursuant to applicable law, the Recipient shall provide the Disclosing Party written notice prior to undertaking any such reverse engineering, and shall give the Disclosing Party a reasonable amount of time to provide any interface information required by law prior to commencing such reverse engineering. If such interface information is provided, then the Recipient is prohibited from such reverse engineering. The Recipient agrees not to remove or export from the United States or re-export any of the Disclosing Party's Confidential Information or any direct product thereof except in compliance with this paragraph, and in compliance with, and with all licenses and approvals required under, applicable export laws and regulations, including without limitation, those of the United States Department of Commerce.

4.  *Maintenance of Confidentiality*. The Recipient shall maintain the confidentiality of the Disclosing Party's Confidential Information with at least the same degree of care that it uses to protect its own Confidential Information, but in any event shall use at least commercially reasonable measures to protect the confidentiality of and avoid disclosure of the Disclosing Party's Confidential Information. The Recipient further agrees that the Disclosing Party's Confidential Information will be kept confidential and the Recipient agrees it will not disclose any of the Disclosing Party's Confidential Information to employees or to third parties; *provided, however*, that any of such Confidential Information may be disclosed to Recipient's directors, officers, employees or representatives who need to know such Confidential Information for the purpose of evaluating the Opportunity and have agreed to abide by or are otherwise subject to non-disclosure terms at least as protective of the Disclosing Party's Confidential Information as those set forth herein. Recipient also agrees to only make such copies of Confidential Information as are necessary to evaluate the Opportunity. The Recipient shall reproduce the Disclosing Party's proprietary rights and confidentiality notices on any such authorized copies in the same manner in which such notices were set forth in or on the original. Recipient shall promptly notify the Disclosing Party in the event of any unauthorized use or disclosure of the Disclosing Party's Confidential Information.

5.  *Disclosure Required by Law*. In the event the Recipient is required by law or a valid and effective subpoena or order issued by either a court of competent jurisdiction or a governmental body to disclose any of the Disclosing Party's Confidential Information, the Recipient shall promptly notify the Disclosing Party in writing of the existence, terms, and circumstances surrounding such required disclosure so that the Disclosing Party may seek a protective order, or have the Recipient seek such protective order on its behalf, or other appropriate relief from the proper authority. The Recipient shall cooperate with the Disclosing Party in seeking such order or other relief. If the Recipient is nonetheless required to disclose the Disclosing Party's Confidential Information, it will furnish only that portion of the Confidential Information that is legally required and will exercise all reasonable efforts to obtain reliable assurances that such Confidential Information will be treated confidentially to the extent possible.

6.  *No Obligation*. Each party understands and agrees that nothing herein requires either party (i) to disclose any Confidential Information, which shall be disclosed, if at all, solely at the option of the Disclosing Party; (ii) to proceed with the Opportunity or any relationship in connection with which Confidential Information may be disclosed; or (iii) to refrain from entering into an agreement or negotiation with any other party. Nothing in this Agreement shall be construed as creating any joint venture, teaming arrangement, partnership, or other formal business organization or agency arrangement between the parties.

7. **No Warranty**. ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS." NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING THE ACCURACY, COMPLETENESS OR PERFORMANCE OF THE CONFIDENTIAL INFORMATION, AND EACH PARTY EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

8. **Return of Materials**. All documents and other tangible objects containing or representing Confidential Information which have been disclosed by the Disclosing Party to the Recipient and all copies thereof shall be and remain the property of the Disclosing Party and shall be promptly returned to the Disclosing Party (or in the cases of notes or abstracts; destroyed or permanently deleted) upon the Disclosing Party's written request, termination or expiration of this Agreement, whichever is sooner; provided, however, that nothing contained herein shall require the destruction, deletion or modification of any backup electronic media made pursuant to archival processes in the ordinary course of business; provided, further that such backup tapes or other archived media shall only be accessible by information technology personnel and shall not be accessed or used for any purpose by either party other than as permitted hereunder.

9. **No License**. All of the Disclosing Party's Confidential Information shall remain the sole property of the Disclosing Party. Nothing in this Agreement is intended to grant any rights to any party under any patent, copyright, trade secret or other intellectual property right of the other party, nor shall this Agreement grant either party any rights in or to other party's Confidential Information except as expressly set forth herein.

10. **Term and Termination**. This Agreement shall be effective as of the Effective Date and shall remain in effect for a period of three (3) years. Thereafter, the Agreement shall automatically renew for additional automatic one (1) year terms if any Confidential Information has been exchanged within three (3) months preceding the renewal date. Otherwise, the Agreement shall expire. Upon expiration or termination of this Agreement, the obligations of the Recipient with respect to the Disclosing Party's Confidential Information shall survive and shall continue until such Confidential Information is no longer Confidential Information as defined herein.

11. **Remedies**. The Recipient agrees that its obligations hereunder are necessary and reasonable in order to protect the Disclosing Party and the Disclosing Party's business, and expressly agrees that monetary damages would be inadequate to compensate the Disclosing Party for any breach by the Recipient of this Agreement. Accordingly, the Recipient agrees and acknowledges that any such breach or threatened breach of this Agreement will cause irreparable injury to the Disclosing Party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the Disclosing Party shall be entitled to obtain injunctive relief against the continuation of such breach or the threatened breach of this Agreement, without the necessity of proving actual damages or posting bond.

12. **Miscellaneous**. This Agreement shall be governed by the laws of the State of Florida without regard to the conflicts of law provisions thereof, and the parties consent to the exclusive jurisdiction and venue of the state and federal courts located in Broward County, Florida and agree to waive all objections to personal jurisdiction, venue and *forum non conveniens*. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior communications, reports and understandings between the parties with respect thereto. Any failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision hereof. If any term of this Agreement is found by any court to be void or otherwise unenforceable, the remainder of this Agreement shall remain valid and enforceable as though such term were absent on the Effective Date. This Agreement shall bind and inure to the benefit of the parties hereto and their successors and assigns. Neither party may assign this Agreement without the express written consent of the other party, and any prohibited assignment shall be void; *provided* that either party may assign this Agreement pursuant to a merger, acquisition or sale of all or substantially all of such party's assets except in the event that the proposed assignee is a competitor of the other party. This Agreement may not be amended, nor any obligation waived, except by a writing signed by both parties hereto. This Agreement may be executed in counterparts, each of which shall be deemed original, and both together shall constitute one and the same instrument.

**In Witness Whereof**, the undersigned have executed this Mutual Nondisclosure Agreement as of the Effective Date.

**GBB Drink Lab, Inc,** *Disclosing Party*

*miklos gulyas*
Signature

John Miklos Gulyas
Print Name

Manager
Title

2505 Providence Circle, Weston, FL 33327
Address

**FSD BioSciences, Inc., and its parent, FSD Pharma, Inc.; and also including Joseph Romano of the Romano Law Firm.**
(the "*Recipient*.").

Joseph L. Romano (Jul 5, 2022 15:27 EDT)
Signature

Anthony Durkacz
Print Name (if on behalf of an entity)

Founder, Interim CEO, Executive Co-Chairman of the Board
Title (if on behalf of an entity)

199 Bay Street, Suite 4000
Toronto, ON, M5L 1A9 Canada
Address

Joseph L. Romano (Jul 5, 2022 15:29 EDT)
Signature

|  |  |
|---|---|
|  | Joseph Romano |
|  | Print Name (if on behalf of an entity) |
|  | Romano Law Firm |
|  | 885 Sheppard Ave W, North York, ON M3H 2T4, Canada |
|  | Address |
| Date:  July 5, 2022 | Date: July 5, 2022 |