**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO.:  23-CV-60800-AHS

|  |  |
|---|---|
| GBB DRINK LAB, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FSD BIOSCIENCES, INC., and | ) |
| FSD PHARMA, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| _____ | ) |

**<u>DEFENDANT FSD PHARMA, INC.'S MOTION TO DISMISS</u>**
**<u>PLAINTIFF GBB DRINK LAB, INC.'S COMPLAINT</u>**

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.

Chelsea E. Koff, Esq.
Florida Bar No. 0100557
New River Center, Suite 2100
200 East Las Olas Boulevard
Fort Lauderdale, FL 33301
ckoff@stearnsweaver.com

WILSON SONSINI GOODRICH
& ROSATI, P.C.
Jordan R. Jaffe (*pro hac vice* pending)
jjaffe@wsgr.com
Catherine Lacey (*pro hac vice* pending)
clacey@wsgr.com
Alexander K. Brehnan (*pro hac vice* pending)
abrehnan@wsgr.com

*Attorneys for Defendant FSD Pharma, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

    *The Parties* ............................................................................................................ 2

    *Alleged Facts* ....................................................................................................... 3

MEMORANDUM OF LAW ............................................................................................ 4

I.     Legal Standards ................................................................................................ 4

II.    Plaintiff's First Cause of Action for Breach of Contract Should Be
Dismissed Because Plaintiff Fails to Allege Sufficient Facts to Support
Breach and Damages ...................................................................................... 5

       A.    Plaintiff Fails to Allege Any Confidential Information FSD
Misused ............................................................................................ 5

       B.    Plaintiff Brings Nothing More Than Conclusory Allegations of
Damage Suffered ............................................................................. 8

III.   GBB Fails to State Any Cause of Action for Trade Secret
Misappropriation ............................................................................................ 9

       A.    Plaintiff Fails To Identify the Information It Purports To Be a Trade
Secret and, Even If It Did, Plaintiff Did Not Allege the
Confidentiality of that Information ................................................. 10

       B.    Plaintiff Fails to Sufficiently Allege Misappropriation ................. 13

       C.    Plaintiff Has Not Alleged It Has Taken Reasonable Measures to
Protect Its Trade Secrets ................................................................ 14

IV.   GBB's Second Cause of Action for Temporary and Permanent Injunction
Should Be Dismissed As There Is No Cause of Action for an Injunction; It
Is a Remedy .................................................................................................... 15

CONCLUSION ................................................................................................................ 16

REQUEST FOR A HEARING ........................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abruzzo v. Haller*,
603 So. 2d 1338 (Fla. 1st Dist. Ct. App. 1992) ...................................................5

*ActivEngage, Inc. v. Smith*,
No. 6:19-cv-1638-Orl-37LRH, 2019 WL 5722049 (M.D. Fla. Nov. 4, 2019)................12

*Altman Stage Lighting, Inc. v. Smith*,
No. 20 CV 2575 (NSR), 2022 WL 374590 (S.D.N.Y. Feb. 8, 2022)..............................15

*Am. Registry, LLC v. Hanaw*,
No. 2:13-cv-352-FtM-29UAM, 2013 WL 6332971 (M.D. Fla. Dec. 5, 2013) .........5, 7, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................4, 5, 7, 9

*Beck v. Lazard Freres & Co., LLC*,
175 F.3d 913 (11th Cir. 1999) ...........................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................4, 5, 7

*Burlington & Rockenbach, P.A. v. Law Offs. of E. Clay Parker*,
160 So. 3d 955 (Fla. 5th Dist. Ct. App. 2015) ...................................................5

*Coinstar, Inc. v. Coinbank Automated Sys.*, Inc.,
998 F. Supp. 1109 (N.D. Cal. 1998) .................................................................4

*Compulife Software, Inc. v. Newman*,
959 F.3d 1288 (11th Cir. 2020) .........................................................................10

*Day v. Taylor*,
400 F.3d 1272 (11th Cir. 2005) .........................................................................4

*Del Monte Fresh Produce Co. v. Dole Food Co.*,
136 F. Supp. 2d 1271 (S.D. Fla. 2001) .............................................................12

*Delray Recovery Ctr., Ltd. Liab. Co. v. Palm Partners, Ltd. Liab. Co.*,
No. 11-81281-CIV-MIDDLEBROOKS, 2012 WL 12855462
(S.D. Fla. Mar. 16, 2012) .................................................................................12

*Eakin Enters. v. Specialty Sales LLC*,
No. 1:11-CV-02008-LJO-SKO, 2012 WL 2445154 (E.D. Cal. June 26, 2012)................4

*Ferretti v. Nova Se. Univ., Inc.*,
  604 F. Supp. 3d 1330 (S.D. Fla. 2022) ......................................................5

*Hard Candy, Ltd. Liab. Co. v. Anastasia Beverly Hills, Inc.*,
  921 F.3d 1343 (11th Cir. 2019) ....................................................................15

*Keystone Plastics, Inc. v. C & P Plastics, Inc.*,
  340 F. Supp. 55 (S.D. Fla. 1972) ..............................................................6, 7

*Keystone Plastics, Inc. v. C & P Plastics, Inc.*,
  506 F.2d 960 (5th Cir. 1975) ........................................................................6

*Knights Armament Co. v. Optical Sys. Tech.*,
  568 F. Supp. 2d 1369 (M.D. Fla. 2008) ......................................................13

*Laing v. BP Expl. & Prod.*,
  No. 8:13-cv-1041-T-23TGW, 2014 WL 272846 (M.D. Fla. Jan. 23, 2014) ....................15

*Lanzone v. Boggs*,
  No. 18-80399-CIV, 2018 WL 11436537 (S.D. Fla. June 12, 2018) ..................15

*Mamani v. Berzain*,
  654 F.3d 1148 (11th Cir. 2011) ....................................................................5

*McDonald's Corp. v. Robertson*,
  147 F.3d 1301 (11th Cir. 1998) ..................................................................16

*Medafor, Inc. v. Starch Med., Inc.*,
  No. 09-CV-0441 (PJS/FLN), WL 2163580 (D. Minn. July 16, 2009) ..............6

*Melvin v. Walmart Inc.*,
  No. 5:20-CV-51-MW/MJF, 2021 WL 5889995 (N.D. Fla. Nov. 9, 2021) ..........5

*Mobile Shelter Sys. USA v. Grate Pallet Sols., LLC*,
  845 F. Supp. 2d 1241 (M.D. Fla. 2012) ......................................................16

*Pellerin v. Honeywell Int'l*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ..........................................................6

*Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*,
  188 F. Supp. 2d 1350 (S.D. Fla. 2002) ......................................................16

*Surfaces, Inc. v. Point Blank Enter.*,
  No. 20-62648-CIV-SMITH, 2022 WL 18956038 (S.D. Fla. Dec. 27, 2022) ..............10, 15

*Taxinet, Corp. v. Leon*,
  No. 16-24266-CIV-MORENO, 2018 WL 3405243 (S.D. Fla. July 10, 2018) ..................11

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
  No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022) ....................................14

*VVIG, Inc. v. Alvarez*,
    No. 18-23109-CIV, 2019 WL 5063441 (S.D. Fla. Oct. 9, 2019) ...............................10, 11

*Warehouse Sols. Inc. v. Integrated Logistics, LLC*,
    610 F. Appx 881 (11th Cir. 2015) ...................................................................................14

*Yellowfin Yachts, Inc. v. Barker Boatworks*,
    *LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018) ...................................................................10

**Statues**

18 U.S.C. § 1836, *et seq.*...................................................................................................9, 10

18 U.S.C. § 1839(3) ...............................................................................................................11

Fla. Stat. § 688.001, *et seq.* ..................................................................................................10

Fla. Stat. Ann. § 688.002(4)...................................................................................................12

**Rules**

Federal Rule Civil Procedure 12(b)(6) ...........................................................................1, 4, 12

Federal Rule of Evidence 201..............................................................................................3, 4

Local Rule 7.1(b)(2)................................................................................................................17

Defendant FSD Pharma, Inc. ("FSD" or "Defendant") submits this Motion to Dismiss ("Motion"), along with the following Memorandum of Law, in support of its moving to dismiss Plaintiff GBB Drink Lab, Inc.'s ("GBB" or "Plaintiff") Complaint ("Complaint" or "Compl.") (ECF No. 1) filed in the above-captioned action, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted.

## INTRODUCTION

This is a case of sour grapes.  FSD, in good faith, explored a potential business opportunity where it considered purchasing certain assets from GBB related to GBB's purported drink for minimizing the effects of alcohol.  As part of those discussions, the parties signed a "Mutual Nondisclosure Agreement" (NDA) to be able to disclose confidential information with each other.  During the diligence FSD conducted, it discovered that GBB's assets were anything but "proprietary" or "extremely valuable," as GBB had claimed, including because a test batch of the drink failed.  FSD therefore elected not to "proceed with the [business] Opportunity or any relationship in connection with which Confidential Information may be disclosed" as expressly permitted in the NDA.  Shortly thereafter, FSD satisfied its sole remaining obligation under the NDA, sending a letter saying it will or has destroyed all "Confidential Information" it had received from GBB.

FSD then decided to pursue *its own independent research* for minimizing the effects of alcohol.  That made sense for FSD: It relates to FSD's existing knowledge and expertise in reducing the mental impairment effects of drugs.  Now, seeing that FSD decided to proceed with research and development on this topic without them, GBB files this lawsuit.  GBB's Complaint is long on rhetoric but fails to plausibly plead any claims.  GBB's argument boils down to the contention that any research and development on the topic of minimizing the effects of alcohol breaches the NDA or misappropriates trade secrets, which is not the law.  GBB does not have a monopoly on researching the effects of alcohol or offering a product to address them; there are many companies around the world working on this issue.  GBB's Complaint fails to plausibly plead any claim as a result.

Specifically, GBB brings a total of four purported claims in its Complaint against Defendants FSD Pharma, Inc. and FSD BioSciences, Inc.[1] which should all be dismissed: Breach of Contract (Count I), Misappropriation of Trade Secrets under Federal and Florida law (Counts III & IV), and an improper claim for injunctive relief (Count II).  Each of the first three counts listed fails because each requires that GBB plausibly allege that FSD misused **confidential** information of GBB.  GBB has not and cannot plausibly make such an allegation, and instead tries to rest these baseless claims on the incorrect premise that any research in the field must use GBB's confidential information or trade secrets.  In fact, GBB goes even further and attempts to claim as "confidential" or a "trade secret" information **that is in GBB's public-facing patents**. Its Complaint alleges that "GBB's patents" were exchanged under the NDA as part of the "confidential information" it provided to FSD.  But public information such as in GBB's patents is by definition not confidential.  And GBB fails to allege **any** specific information that is confidential or a trade secret that was disclosed to FSD and that FSD used improperly.  Count II fails because it is not a claim at all—it is a remedy (injunctive relief).

GBB's claims are a transparent attempt to try and profit off FSD's own research and development after FSD decided not to proceed with a partnership with GBB.  FSD respectfully requests the Court dismiss the Complaint.

## BACKGROUND

### The Parties

Defendant FSD Pharma, Inc. is an innovative medical product solutions company focused on addressing the root causes of health problems.  FSD's products have the potential to help millions of patients with disorders that affect their brain functionality and cause inflammation. FSD's goal is to improve the quality of life of patients by removing impairments to the normal functioning of their brains and other mental processes.  FSD is incorporated and headquartered in Ontario, Canada.  Compl. ¶ 2.

---

[1] As of the date of filing this Motion, Plaintiff has not served FSD Biosciences, Inc.  *See* ECF No. 7.

Plaintiff GBB Drink Lab, Inc. claims it is bringing a product into a robust market that seeks to reduce the effects of alcohol intake and thereby hasten the return to "normal, non-impaired behavior."  *See Science*, GBB DRINK LAB, https://gbbdrinklab.com/science/ (visited May 29, 2023).  GBB's team purportedly includes sophisticated businessmen, including "serial entrepreneurs, a former senior executive from one of the world's largest beverage companies, and an industry leading expert in flavoring science and product formulation." *About Us*, GBB DRINK LAB, https://gbbdrinklab.com/about-us/ (visited May 29, 2023).[2]

### *Alleged Facts*

FSD has a talented team of distinguished scientists and medical researchers who are working on finding solutions to disorders of the brain, inflammation, and related areas.  These scientists have decades of experience in discovery and development in medical and pharmaceutical sciences.  Accordingly, FSD had a natural interest in a product GBB claimed to be developing to "enhanc[e] the metabolic pathways" with the goal of shortening the duration of the mental impairment effects caused by alcohol.  Compl. ¶ 8.  On June 14, 2022, FSD first developed this interest when GBB—unprompted—presented samples of its "proprietary drink" to two employees of FSD to consume, which they did, after a dinner in the Cayman Islands.  *Id.* at ¶ 10.  It is undisputed that at no time before the samples were distributed on that day did FSD's employees sign a confidentiality agreement, and GBB does not allege that it told FSD's employees that GBB considered the samples proprietary or confidential.

On July 5, 2022, FSD and GBB signed a "Mutual Nondisclosure Agreement" ("NDA").  *Id.* at ¶ 12 & Ex. 1.  Among other things, the NDA expressly excludes from the definition of "Confidential Information" "any information which (i) is now, or hereafter becomes . . . generally known and made generally available in the public domain."  *Id.* at Ex. 1, § 2 ("Confidential

---

[2] Pursuant to Federal Rule of Evidence 201, Defendant respectfully requests the Court take judicial notice of the webpages cited on pages 3, 7, 12, and 14.  The webpages are publicly viewable and accessible, their authenticity is not in question, and, as to the webpages cited on pages 3 and 7, they come from GBB's own website, and, as to the webpages from "Hangover Ace" cited on pages 12 and 14, they come from what FSD understands to be a predecessor or related party to GBB.

Information"). The NDA also states that "[e]ach party understands and agrees that nothing herein requires either party . . . to proceed with the Opportunity or any relationship in connection with which Confidential Information may be disclosed." *Id.*, § 6 ("No Obligation"). "[C]opies of GBB's patents" were among the information GBB provided to FSD. Compl. ¶ 21; *see* Decl. of Alexander K. Brehnan ("Decl."), Exhibits ("Ex.") 1, 2, 3.[3]

FSD ultimately did not purchase GBB or its assets, as the parties acknowledged FSD was permitted to do in the NDA. *See* Compl. ¶ 26 & Ex. 1, § 6.[4] In February 2023, FSD announced "the launching of a new research and development program targeting unmet medical needs for alcohol misuse." Compl. ¶ 27. On April 14, 2023, GBB sent Defendant a cease-and-desist demand letter, highlighting that "the study announced by Defendant[ ] in the Feb. 14, 2023 Press Release was the direct result of [Defendant's] receipt of confidential and proprietary information from GBB." *Id.* at ¶ 38. On May 1, 2023, GBB filed the instant lawsuit against FSD.

## MEMORANDUM OF LAW

### I. Legal Standards

Rule 12(b)(6) requires that a complaint contain sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Those allegations must consist of "factual content that allows the court to draw the

---

[3] The patents are incorporated by reference as they are one of the few specific pieces of information GBB contends was exchanged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("The court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."). Alternatively, FSD requests judicial notice of the patents, which are a proper subject of judicial notice. *Eakin Enters. v. Specialty Sales LLC*, No. 1:11-CV-02008-LJO-SKO, 2012 WL 2445154, at *4 (E.D. Cal. June 26, 2012) (*citing Coinstar, Inc. v. Coinbank Automated Sys.*, Inc., 998 F. Supp. 1109, 1114 (N.D. Cal. 1998) (judicially noticing two patents because "judicial notice of matters of public record, including administrative records and procedures, [is] appropriate pursuant to Rule 201")).

[4] GBB alleges that negotiations continued "through at least December 12, 2022" (¶ 26) but neglects to mention that, on that date, FSD informed GBB it had concerns with the elements of GBB's patent portfolio and more generally the value of the assets proposed by GBB.

reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and thus a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *See id.* ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 557). "Legal conclusions without adequate factual support are entitled to no assumption of truth." *Am. Registry, LLC v. Hanaw*, No. 2:13-cv-352-FtM-29UAM, 2013 WL 6332971, at *2 (M.D. Fla. Dec. 5, 2013) (*citing Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011)).

**II.    Plaintiff's First Cause of Action for Breach of Contract Should Be Dismissed Because Plaintiff Fails to Allege Sufficient Facts to Support Breach and Damages**

**A.  Plaintiff Fails to Allege Any Confidential Information FSD Misused**

In Florida, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Ferretti v. Nova Se. Univ., Inc.*, 604 F. Supp. 3d 1330, 1333 (S.D. Fla. 2022) (*citing Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st Dist. Ct. App. 1992)). To show a breach, "a plaintiff plausibly must allege that defendant 'failed to perform a duty that goes to the essence of the contract.'" *Melvin v. Walmart Inc.*, No. 5:20-CV-51-MW/MJF, 2021 WL 5889995, at *11 (N.D. Fla. Nov. 9, 2021) (*citing Burlington & Rockenbach, P.A. v. Law Offs. of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th Dist. Ct. App. 2015)).

Here, Plaintiff fails to allege facts sufficient to support the breach element of the claim, making only vague and conclusory allegations that Defendant breached the terms of the NDA by "failing to keep confidential the Confidential Information supplied by GBB and by using the Confidential Information outside the very limited 'Permitted Use'" under the NDA. Compl. ¶ 41.

*First*, Plaintiff fails to identify the confidential information that Defendant purportedly used in violation of the NDA. Plaintiff's conclusory allegations about some unidentified "confidential information" fail to state a claim for breach of contract as a matter of law. *See id.*

at ¶ 41; *see Am. Registry,* 2013 WL 6332971, at *4 (dismissing breach of contract and trade secret claims for the "same deficiencies" where "plaintiff's list of trade secrets does not adequately inform defendants what they supposedly misappropriated"); *Pellerin v. Honeywell Int'l,* 877 F. Supp. 2d 983, 990 (S.D. Cal. 2012) (finding no breach of contract sufficiently alleged when defendant did "not [plead] what the 'trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the agreements"); *Medafor, Inc. v. Starch Med., Inc.*, No. 09-CV-0441 (PJS/FLN), WL 2163580, at *1–2 (D. Minn. July 16, 2009) (finding no breach of contract when "the 'Confidential Information' that [a nonparty signee] allegedly disclosed, the complaint does not even purport to identify it").

The allegations that unidentified, allegedly misappropriated "confidential information" was exchanged pursuant to the NDA also do not save GBB's claims. By its plain and unambiguous terms, the NDA excludes from the definition of "confidential information" any information that was generally known or within the public domain. *See* Compl., Ex. 1, § 2 ("Confidential Information shall not, however, include any information which (i) is now, or hereafter becomes . . . generally known and made generally available in the public domain."). Simply put, information does not become "confidential" because it was exchanged under the NDA.

Although Plaintiff does purport to identify certain information it claims was exchanged under the NDA, that information cannot serve as the basis of this claim because such information is not confidential on its face. For example, Plaintiff points to the patents it provided to Defendant (Compl. ¶ 21), which cannot be confidential because they are publicly available. *See Keystone Plastics, Inc. v. C & P Plastics, Inc.*, 340 F. Supp. 55, 63 (S.D. Fla. 1972), *aff'd*, 506 F.2d 960 (5th Cir. 1975) ("[P]ublication of the [] Patent [] by [Plaintiff] amounts to a specific repudiation of any alleged trade secrets disclosed therein as of the date of publication."). Similarly, the samples of its drink GBB provided to Defendant cannot form the basis of a claim for breach of the NDA because they were admittedly provided to Defendants without any prior agreement for keeping them confidential. *See* Compl. ¶¶ 10, 12. GBB does not even allege that

it told Defendant's employees that these drinks were confidential at the time they were invited to try them.

The only information Plaintiff specifically alleges is "proprietary" is a formula, but Plaintiff has not alleged that Defendant used the formula or any related facts.  Compl. ¶ 8.  Moreover, the patents further disclose GBB's allegedly "proprietary" formula as GBB's own website admits. *Science*, GBB DRINK LAB, https://gbbdrinklab.com/science/ (visited May 30, 2023) ("Our ***patented formula*** accelerates the process of converting alcohol to sugar in the body." (emphasis added)).  GBB's reliance on its patented formula as confidential information makes an identification of what "confidential" information FSD allegedly misused all the more important.  Indeed, Plaintiff touts its "assets," including its "patents" (Compl. ¶¶ 9, 11, 21, 25, 26), but does not allege its formula is not revealed by those patents, which, by definition, would be public.  *See also Keystone Plastics*, 340 F. Supp. at 63.  At the very least, without GBB detailing what "confidential" information was misused, FSD is unable to determine what information is at issue, rendering the Complaint insufficient under *Iqbal/Twombly*.

*Second*, Plaintiff does not provide sufficient detail in its allegations of how the alleged breach occurred.  At most, Plaintiff recites the vague allegations that Defendant's "study [for a product to reduce the effects of alcohol intake] . . . was the direct result of Defendants' receipt of confidential and proprietary information from [Plaintiff]" (Compl. ¶ 38) and Defendant used "the Confidential Information outside the very limited 'Permitted Use'" (*Id.* at ¶ 41).  Those conclusory allegations are insufficient.

Florida courts have found additional "factual content" is needed "to reasonably infer that [defendant] is using confidential information." *Am. Registry,* 2013 WL 6332971, at *2.  For example, in *Am. Registry*, the plaintiff pled that the defendant breached a confidentiality provision of an agreement by using confidential information received from plaintiff in the "formation and operation" of the defendant's competing company.  *Id.* at *2, 4.  The court held that while plaintiff's allegations made the misuse of confidential information "conceivable, the plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at *2 (*citing Iqbal*, 556 U.S. at 678).  Similarly here, Plaintiff has drawn a

conclusory connection between Defendant's "study" and Defendant's misuse of Plaintiff's confidential information without any "factual content" to substantiate the allegation of breach. Looking at the Press Release that GBB relies upon (Compl. ¶ 27 n. 1), it does not mention anything about GBB, GBB's formula, or otherwise.  See:

> "FSD Pharma's existing pipelines and research priorities in brain and inflammatory disorders, including mental health, provides a natural extension to investigate the effects of alcohol on the brain. Our clinical and product development teams are exploring how to limit and potentially reverse the negative effects of alcohol on brain function," said Dr. Lakshmi Kotra, CEO of Lucid Psycheceuticals ("Lucid"), a subsidiary of FSD Pharma. "There is a significant amount of research in this area already conducted by pioneers in the field, and we are bringing together our knowledge in pharmacology, regulatory strategy and product development in our search for solutions to address the effects of alcohol consumption."

Feb. 14, 2023 Press Release.[5]  This press release does not support any alleged breach of GBB's confidential information as it merely outlines FSD's **own general** research in this area, which is not prohibited by the NDA and in fact expressly permitted.  Compl., Ex. 1, § 6 ("**No Obligation**. Each party understands and agrees that nothing herein requires either party …(ii) to proceed with the Opportunity or any relationship in connection with which Confidential Information may be disclosed." (emphasis added)).

Without sufficient allegations concerning identification of actual confidential information or the improper use of such confidential information in violation of the NDA, Plaintiff fails to state a cause of action for breach of contract as a matter of law.

### B.  Plaintiff Brings Nothing More Than Conclusory Allegations of Damage Suffered

The analysis above logically extends to the damages element: Plaintiff's alleges no facts showing damages from any misuse of confidential information because: (1) the Complaint does not identify any specific Confidential Information under the NDA; and (2) the Complaint fails to identify how any alleged misuse of that Confidential Information—as opposed to other

---

[5] Cited in the Complaint at ¶ 27 n. 1, and available at https://fsdpharma.com/fsd-pharma-launches-a-new-research-and-development-program-targeting-unmetmedical-needs-for-alcohol-misuse/.

permissible activities—caused it damages.[6]  Plaintiff's conclusory allegation that it has "suffered damages and continues to suffer increasing damages as a result of Defendants' material breach" (Compl. ¶ 43) does nothing to cure the lack of factual allegations.  *Iqbal*, 556 U.S. at 678.

Plaintiff must allege damages based on a ***breach***, but it has failed to do so.  Simply saying that Plaintiff has been harmed by FSD's research and development on this topic is not enough because that is not a breach of the NDA and is in fact expressly permitted by it.  Compl., Ex. 1, § 6.  This failure of pleading is highlighted by GBB's complained of additions to FSD's Advisory Board.  Compl. ¶¶ 31–37 ("GBB is very concerned about the irreparable harm that Defendants' association with iconic entrepreneurs such as Mr. Harrington will cause for GBB as it continues to conduct research surrounding the composition and methods of using the composition for minimizing the harmful effects associated with alcohol consumption and ultimately launch a product that accomplishes same . . ."  Compl. ¶ 33).   The alleged harm created by "Defendants' association with iconic entrepreneurs" is not a breach of the NDA.  There are no allegations (nor could there be) that these entrepreneurs themselves were confidential information or were even discussed by the parties to the NDA.   Similarly, GBB incredibly requests "no less than $53,047,000.00" in relief (Compl. at 16), but the Complaint alleges that the whole company, including public assets such as its patents, was valued at that same amount.  Compl. at 1.  This shows GBB's fundamental failure to allege damages based on a breach of the NDA.

Because GBB fails to allege sufficient facts regarding the alleged breach to carry a claim of breach of contract, Count I should be dismissed.

## III.   GBB Fails to State Any Cause of Action for Trade Secret Misappropriation

Plaintiff's causes of action for trade secret misappropriation fail to state claims for reasons similar to those related to its faulty breach of contract claim: Plaintiff does not sufficiently allege a trade secret or how any trade secret was misappropriated.  Plaintiff also fails to sufficiently

---

[6] Indeed, Plaintiff has no product or services for sale that could be damaged, or at least has alleged no such product or services.

allege, and cannot allege, any reasonable measures taken to protect the secrecy of its alleged trade secrets.

Plaintiff brings causes of action for misappropriation of trade secrets under 18 U.S.C. § 1836 (the "Defend Trade Secrets Act" or "DTSA") and under the Florida Uniform Trade Secrets Act, § 688.001, *et seq.* (the "FUTSA").  The DTSA requires Plaintiff to plead it (1) possessed information of independent economic value that (a) was lawfully owned by Plaintiff and (b) for which Plaintiff took reasonable measures to keep secret, and (2) Defendant used and/or disclosed that information, despite (3) a duty to maintain its secrecy.  *See* 18 U.S.C. § 1836, *et seq*.  The FUTSA requires Plaintiff plead it (1) "possessed a 'trade secret' and (2) the secret was misappropriated."  *Surfaces, Inc. v. Point Blank Enter.*, No. 20-62648-CIV-SMITH, 2022 WL 18956038, at *3 (S.D. Fla. Dec. 27, 2022) (*citing Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018)).  Like the DTSA, under the FUTSA to qualify as a "trade secret" information must "[d]erive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and must be "subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *Yellowfin Yachts*, 898 F.3d at 1297.  The Eleventh Circuit has recognized that causes of action under the DTSA and FUTSA "largely mirror[]" each other.  *Compulife Software, Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020).

### A. Plaintiff Fails To Identify the Information It Purports To Be a Trade Secret and, Even If It Did, Plaintiff Did Not Allege the Confidentiality of that Information

Plaintiff fails to allege the first prong of the trade secret analysis by not identifying the trade secret.  At the motion to dismiss stage, Plaintiff must identify the trade secret with "sufficient particularity," meaning Plaintiff must allege sufficient facts to plausibly show a trade secret was involved and to give Defendant notice of the material it claims constitute a trade secret.  *VVIG, Inc. v. Alvarez*, No. 18-23109-CIV, 2019 WL 5063441, at *3 (S.D. Fla. Oct. 9, 2019).  The allegations of a trade secret cannot be "so broad and conclusory as to be nonsensical."  *Id.*

at *3.  "[A]ll information concerning a product is not a trade secret." *Id.* at *4 (internal quotations and citations omitted).

Here, Plaintiff has not alleged which information constitutes the trade secret allegedly at issue.  Rather, Plaintiff merely states in a conclusory manner that its trade secret includes its "confidential and proprietary information described herein" (Compl. ¶ 56) and that "the Confidential Information and trade secrets obtained by Defendants constituted trade secrets." (*Id.* at ¶ 57).  But those vague references are exactly the type of nonsensical, broad, and conclusory allegations courts have found insufficient to state a claim.  *See VVIG*, 2019 WL 5063441, at *4 (Defining a trade secret "as *all information* concerning the products . . . fails to notify [defendants] what aspects of the [trade secret] [defendants] misappropriated.").  It is also not enough to simply list information without identifying which is the trade secret.  *See, e.g.*, Compl. ¶¶ 19, 21; *Taxinet, Corp. v. Leon*, No. 16-24266-CIV-MORENO, 2018 WL 3405243, at *3 (S.D. Fla. July 10, 2018) ("While [plaintiff] lists in its complaint certain characteristics of its business model, including its Taximeter, GPS Navigation System, a Tracking System with a panic button, a Payment Gateway for credit cards, and a future booking system, it does not lay out in its complaint, which of these 'trade secrets' were impermissibly used by [defendant].").

Plaintiff points to "Confidential Information," as defined in the NDA, as including Plaintiff's "technology and know-how for a present invention that relates to a composition, and methods of using the composition, for minimizing the harmful effects associated with alcohol consumption," which has a "plurality of ingredients", and including all of Plaintiff's "business plans, designs, engineering information, inventions, marketing plans, processes, products, product plans, research, specifications, and trade secrets," but Plaintiff does not allege all of these items were even exchanged under the NDA—let alone misused.  *See* Compl. ¶¶ 13–14.  Such allegations are too unspecific and vague to plead a trade secret.  *VVIG*, 2019 WL 5063441, at *4 (holding that "[g]eneral allegations of 'business affairs, products, marketing systems technology, customers, end users, financial affairs, accounting statistical data,' and certainly the catch-all 'all necessary know how' are insufficient" to plead a trade secret).

Further, all information provided to Defendant cannot be confidential, as Plaintiff alleges it is, because most of that information is public.  As stated above, the patents and samples disseminated to Defendant's employees (Compl. ¶¶ 10, 21) are public on their face, and the law is clear that public information cannot be a trade secret.  *See* 18 U.S.C. § 1839(3) (Trade secret means "information . . . not being generally known to, and not being readily ascertainable through proper means by, another person[.]"; Fla. Stat. Ann. § 688.002(4) (substantially similar).  Indeed, Plaintiff has made no effort, as it must here, to allege which information it provided to Defendant comprises a trade secret.  Moreover, in the NDA, GBB ***agreed*** that not all information falling into these general categories qualified as "Confidential Information."  Compl., Ex. 1, § 2 ("Confidential Information shall not, however, include any information which (i) is now, or hereafter becomes . . . generally known and made generally available in the public domain.").  As pled, FSD and the Court can only guess what the alleged trade secret is, or which information is allegedly confidential and proprietary, which does not pass muster under Rule 12(b)(6).

Further, even if it had identified the trade secret, Plaintiff has failed to show that any of the information that it allegedly "seeks to protect . . . derive[s] economic value from not being readily ascertainable by others," as it must for that information to suffice as a trade secret.  *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).  Plaintiff's only such allegation—that the information is "extremely valuable" (*see* Compl. ¶ 18)—is too vague and conclusory to support its claims.  *See Delray Recovery Ctr., Ltd. Liab. Co. v. Palm Partners, Ltd. Liab. Co.*, No. 11-81281-CIV-MIDDLEBROOKS, 2012 WL 12855462, at *3 (S.D. Fla. Mar. 16, 2012) (Alleging information is "highly valuable" is "insufficient [ ] to determine whether the information rises to the level of a trade secret.").  The only information Plaintiff points to that has any specificity is its patents, and those are not secret on their face.  Moreover, what FSD understands is a predecessor or related company to GBB, published the purported "science" behind its chosen ingredients in a related product, making it impossible to

discern from GBB's Complaint what purported information rises to the level of a trade secret given these public disclosures.[7]

At most, Plaintiff has identified an idea—that unidentified substances can reduce the effects of alcohol intake—and not a trade secret or confidential information that FSD is allegedly misusing.  *Cf. ActivEngage, Inc. v. Smith*, No. 6:19-cv-1638-Orl-37LRH, 2019 WL 5722049, at *4 (M.D. Fla. Nov. 4, 2019) ("ActivProspect is a concept. But has this concept moved from an interesting idea to a legally protected trade secret? . . . [T]he concept needs enough substance to be economically valuable and for a court to know what it's protecting.").  And that idea is publicly implemented in many products and public patents.  Compl. ¶ 10.  Without specifically identifying any trade secret derived from that idea and, thus, the economic value derived from that idea, Plaintiff has not alleged a legally protectable trade secret.

### B.       Plaintiff Fails to Sufficiently Allege Misappropriation

Plaintiff's only allegations of misappropriation are bare recitations of generic misuse of confidential information (*see, e.g.,* Compl. ¶ 32 (Defendant's "'breakthrough product' [ ] misappropriates [Plaintiff's] trade secrets[.]")), and not the "factual allegations" needed to allege misappropriation.  *Am. Registry*, 2013 WL 6332971, at *4 (use of trade secret in the "formation and operation" are not sufficient "factual allegations" to plead misappropriation).  Plaintiff's allegations are nothing more than conclusions of Defendants' liability and, thus, fail to allege sufficient facts to support a claim.

*Knights Armament Co. v. Optical Sys. Tech.* is illustrative of the lack of detail Plaintiff has given to sufficiently allege misappropriation.  568 F. Supp. 2d 1369 (M.D. Fla. 2008).  In that case, the court found that there was a "lack of factual support" to plead misappropriation because plaintiff merely alleged "[d]efendants had access to trade secrets through business dealings that exposed them to [plaintiff's] facilities and products" but "[gave] no further details as to how the [ ] [d]efendants allegedly used the trade secrets."  *Id* at 1377.  So here, even if it

---

[7] *The Science*, Hangover Ace, https://web.archive.org/web/20221208055100/https://hangoverace.com/blogs/news/the-science (visited May 29, 2023).

were sufficient – which it is not – that Plaintiff alleged it provided "Confidential Information" to Defendant (Compl. ¶ 57) and provided samples of its "proprietary drink" to Defendant (Compl. ¶ 10), the lack of any "factual support" regarding the use of Plaintiff's trade secrets is insufficient to support misappropriation.

In addition, for the same reasons GBB fails to sufficiently allege any breach of contract, the Complaint fails to allege any misappropriation.  The Complaint points to only general research on this topic and press releases as somehow evidencing misappropriation, but such bare allegations are insufficient.  *See supra*, Section II.A.

### C.    Plaintiff Has Not Alleged It Has Taken Reasonable Measures to Protect Its Trade Secrets

Plaintiff alleges it took reasonable measures "by limiting [the trade secret's] dissemination and by refusing to provide any such information to Defendants until after Defendants became bound by the terms contained in the Mutual NDA."  Compl. ¶ 56.  But this alleged measure is contradicted by Plaintiff's own Complaint.

*First*, Plaintiff alleges that it provided it patents to FSD under the terms of the NDA. Compl. ¶ 21.  But those patents are public information and cannot comprise trade secrets.  The patents further disclose GBB's allegedly "proprietary" formula as GBB's own website admits. *Science*, GBB Drink Lab, https://gbbdrinklab.com/science/ (visited May 30, 2023) ("Our ***patented formula*** accelerates the process of converting alcohol to sugar in the body." (emphasis added)).  The titles of GBB's patents confirm this, with titles such as "Composition, and method of using the composition, effective for minimizing the harmful effects associated with individuals suffering from alcohol intoxication." *See* Decl., Exs. 1, 2.

Because Plaintiff's claims are premised upon its formula contained in its patents, Plaintiff *cannot* claim that it took reasonable steps to maintain the trade secret when Plaintiff applied for these patents and made them public.  *See Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161, at *2 (2d Cir. Mar. 9, 2022) (finding no reasonable measures when a trade secret's "functionality [ ] is made apparent to all users," who did not sign a confidentiality agreement); *cf. Warehouse Sols. Inc. v. Integrated Logistics, LLC*, 610 F. Appx 881 (11th Cir.

2015). Similarly, the purported "science" behind a predecessor product, including the "proprietary" ingredients, were published to the world and are still publicly available today on archived versions of the website for that product.[8] *See Turret Labs*, 2022 WL 701161, at *2.

*Second*, Plaintiff alleges that it allowed FSD's employees "to test GBB's proprietary drink" prior to signing a confidentiality agreement. Compl. ¶ 10 (meeting in Cayman Islands in June 2022); *see* Compl. ¶ 12 (signing of NDA in July 2022). There are no allegations that Plaintiff marked its drink as confidential or required the signing of the NDA prior to sharing it with FSD's employees. Plaintiff cannot maintain it took reasonable measures to protect its trade secret when it alleges behavior that contradicts those reasonable measures. *Surfaces*, 2022 WL 18956038, at *5 ("Disclosure of information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret." (citation omitted)); *Laing v. BP Expl. & Prod.*, No. 8:13-cv-1041-T-23TGW, 2014 WL 272846, at *4 (M.D. Fla. Jan. 23, 2014) (holding no trade secret when "unconditionally disclosing" it to defendant and "includ[ing] no statement, written or verbal, that the idea should remain confidential").

*Third*, the remaining allegations that Plaintiff took reasonable measures because "GBB expressly instructs its officers, directors, and employees to refrain from disclosing confidential, proprietary, and trade secret information to anyone except as required by their employment or as permitted under the Mutual NDA" are similarly insufficient because GBB has also alleged it acted inconsistently with this allegation. Compl. ¶ 56; s*ee Altman Stage Lighting, Inc. v. Smith*, No. 20 CV 2575 (NSR), 2022 WL 374590, at *5 (S.D.N.Y. Feb. 8, 2022) ("While Plaintiff alleges employees were instructed not to discuss the [trade secret], without more, the [complaint] has failed to allege or show Plaintiff took reasonable measures to keep the product secret.").

Plaintiff's failure to take reasonable measures to protect its alleged trade secrets is fatal to its claims. Counts III and IV should be dismissed due to Plaintiff's failure to allege sufficient facts regarding a trade secret or its misappropriation.

---

[8] *The Science*, HANGOVER ACE, https://web.archive.org/web/20221208055100/https://hangoverace.com/blogs/news/the-science (visited May 29, 2023).

**IV.     GBB's Second Cause of Action for Temporary and Permanent Injunction Should Be Dismissed As There Is No Cause of Action for an Injunction; It Is a Remedy**

Plaintiff's cause of action for temporary and permanent injunction fails for the simple fact that it is not a cause of action.

"[I]njunctive relief is the quintessential form of equitable remedy." *Hard Candy, Ltd. Liab. Co. v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019). "[A]n injunction is not a standalone cause of action; it is a remedy for which there must be an underlying cause of action entitling the plaintiff to such relief." *Lanzone v. Boggs*, No. 18-80399-CIV, 2018 WL 11436537, at *2 (S.D. Fla. June 12, 2018); *see Mobile Shelter Sys. USA v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1261 n.7 (M.D. Fla. 2012) ("In Florida, there is no separate cause of action for injunctive relief. It is a remedy, not an independent cause of action."). The law is clear that an injunction cannot be a cause of action.

Moreover, Plaintiff's cause of action for an injunction is based off the faulty premise that either the DTSA (or the FUTSA), the Federal Rules of Civil Procedure, or the NDA between the parties provides a cause of action. Nowhere in the DTSA or Federal Rules of Civil Procedure does the text suggest there is a cause of action for an injunction, nor does the text in the NDA. Compl., Ex. 1, § 11 ("Remedies").

Even if Plaintiff could bring a cause of action for a temporary, preliminary injunction, it fails to make the necessary allegations to avoid dismissal. A temporary injunction requires a showing of: (1) substantial likelihood of success on the merits; (2) irreparable injury that will be suffered unless the injunction issues; (3) a threatened injury to the movant that outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1353 (S.D. Fla. 2002) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). But Plaintiff fails to include anything more than conclusory allegations as to irreparable harm or the likelihood of success of the case on the merits. *See, e.g.,* Compl. ¶ 46 ("GBB has and will continue to suffer irreparable harm for which there is no adequate remedy at law."), ¶ 49 ("GBB has a substantial likelihood of success on the

merits[.]").  Nor could Plaintiff, as it has not even brought sufficient allegations on which to base the underlying causes of action.  *See, supra*, Sections II & III.

Because GBB cannot bring a claim for injunctive relief, Count II should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

**REQUEST FOR A HEARING**

Pursuant to Local Rule 7.1(b)(2), Defendant hereby requests a hearing on its Motion, as Defendant believes oral argument may be helpful for the Court's review of the various issues presented.  Defendant anticipates oral argument for the Motion should take no more than one hour in total.

Dated:  May 30, 2023

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.


*Chelsea E. Koff*
Chelsea E. Koff, Esq.
Florida Bar No. 0100557
New River Center, Suite 2100
200 East Las Olas Boulevard
Fort Lauderdale, FL 33301
Telephone: 954-462-9587
E-mail: ckoff@stearnsweaver.com

WILSON SONSINI GOODRICH & ROSATI,
P.C.
Jordan R. Jaffe (*pro hac vice* pending)
jjaffe@wsgr.com
Catherine Lacey (*pro hac vice* pending)
clacey@wsgr.com
Alexander K. Brehnan (*pro hac vice* pending)
abrehnan@wsgr.com