UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60800-CIV-SINGHAL

GBB DRINK LAB, INC.,

    Plaintiff,

v.

FSD BIOSCIENCES, INC. and
FSD PHARMA, INC.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants FSD Biosciences, Inc., and FSD Pharma, Inc.'s Motion to Dismiss Plaintiff GBB Drink Lab, Inc.'s First Amended Complaint (DE [26]), filed on June 23, 2023.  Plaintiff filed a Response in Opposition to Defendants' Motion (DE [28]) on July 3, 2023.  Defendants then filed a Reply (DE [29]) on July 11, 2023.  The Motion is ripe for this Court's review.

### I.    BACKGROUND

This is a case of a business deal gone awry.  Plaintiff GBB Drink Lab, Inc. ("GBB") credits itself with formulating the "world's first rapid blood alcohol detoxification product." (Am. Compl. (DE [19] at ¶ 1)).  In April 2022, Plaintiff explored a business opportunity with Defendants FSD Biosciences, Inc. ("FSD Biosciences") and FSD Pharma, Inc. ("FSD Pharma"), wherein Defendants considered acquiring GBB and its assets.  *See id.* at ¶ 13. As part of these discussions, GBB shared its proprietary formula pursuant to a Mutual Nondisclosure Agreement (the "Mutual NDA").  *See id.* at ¶ 14.  According to Plaintiff, the parties understood that the potential transaction involved GBB's "technology and know-how for a present invention that relates to a composition, and methods of using the

composition, for minimizing the harmful effects associated with alcohol consumption." *Id.* at ¶ 15.

### A. Confidential Information

The Mutual NDA provided that GBB's "composition contains a plurality of ingredients, which when combined have the unexpected effect of increasing one or more metabolic pathways in the individual." *Id.* "Confidential Information" under the Mutual NDA included, without limitation, "business plans, designs, engineering information, inventions, marketing plans, processes, products, product plans, research, specifications, and trade secrets." *Id.* at ¶ 16.

Plaintiff maintains that it would not have disclosed its proprietary formula without assurances from Defendants that its trade secret information would be maintained in the "strictest confidence." *Id.* at ¶ 17. Plaintiff further contends that Defendants agreed to use the Confidential Information for the limited purpose of evaluating the potential business opportunity. *See id.* at ¶ 18. Accordingly, Plaintiff alleges that Defendants were prohibited from reverse engineering, disassembling, or decompiling anything in the Confidential Information without written consent from GBB. *See id.* Such express consent, Plaintiff maintains, was never provided to Defendants. *See id.* Under the Mutual NDA, the parties acknowledged that any violations of the agreement would entitle GBB to obtain injunctive relief "without the necessity of proving actual damages or posting bond," in addition to other remedies available at law. *Id.* at ¶ 20.

### B. Defendants' Due Diligence

On August 5, 2022, the founder and CEO of an FSD Pharma subsidiary requested additional information to better understand GBB's offerings, including a list of the ingredients, with quantities, of GBB's composition and the manufacturing process for the

2

product and the scale at which GBB last executed its manufacturing, which GBB subsequently provided. *See id.* at ¶ 21. On August 22, 2022, as acquisition discussions continued, Defendants allegedly requested and received additional documentation from GBB, including (i) copies of GBB's patents; (ii) copies of four provisional patents that were not yet available to the public; and (iii) a revised ingredient list that is not contained within any of GBB's patents. *See id.* at ¶ 23. Plaintiff adds that Defendants gathered information during a site visit of GBB's manufacturing partner in Dallas, Texas, on or about November 8, 2022. *See id.* at ¶ 24. During this visit, Plaintiff maintains, Defendants met with GBB's formulator and discussed methods and techniques for combining ingredients to manufacture GBB's proprietary formula. *See id.* Plaintiff contends that the revised ingredient list and the way in which the ingredients are combined, each independently a trade secret, are neither generally known to the public nor included in any of GBB's existing patents. *Id.* at ¶ 25.

Defendants allegedly engaged in further due diligence efforts, including an October 2022 request from Defendants for ten bottles of GBB's working drink formula, to which GBB obliged. *See id.* at ¶ 27. Notwithstanding extensive discussions, the parties never entered into an agreement for Defendants to purchase GBB or any of its assets. *See id.* at ¶ 30.

**C. Defendants Announce a Competitor Product**

On February 14, 2023, Defendants announced a research and development program targeting the "unmet medical needs for alcohol misuse" (the "February 14, 2023 Press Release"). *Id.* at ¶ 31. On February 23, 2023, GBB emailed Defendants and requested a call to discuss Defendants' plans in detail. *See id.* at ¶ 34. Plaintiff maintains that Defendants added two prominent figures to FSD Pharma's Advisory Board in

connection with their forthcoming product, including Kevin Harrington, an entrepreneur who has appeared on the prominent television show *Shark Tank*, and former Celsius Holdings CEO, Gerry David.  *See id.* at ¶¶ 35, 40.

On March 1, 2023, GBB and Defendants held a conference call during which Defendants signaled they would move forward with their plans as announced in the February 14, 2023 Press Release.  *See id.* at ¶ 39.  On April 14, 2023, GBB sent Defendants a cease-and-desist demand letter, which highlighted that the study announced in Defendants' Press Release was the "direct result of Defendants' receipt of confidential and proprietary information" from GBB.  *Id.* at ¶ 35.

Plaintiff's Amended Complaint details several allegations relating to Defendants' forthcoming program.  Plaintiff contends, upon information and belief, that FSD Pharma's interim CEO advised a third party of Defendants' plans to create a drink that is almost identical to the drink that GBB was actively working on and shared with Defendants.  *See id.* at ¶ 44.  Plaintiff also alleges that, of the nineteen ingredients in Defendants' drink, sixteen overlap with those in GBB's drink.  *See id.* at ¶ 45.  One of these ingredients, according to Plaintiff, is a "key element" of GBB's formula that could only have come from GBB.  *See id.* at ¶ 46.  Finally, Plaintiff maintains, upon information and belief, that Defendants engaged Power Brands to assist in the development of a competitor product and, on or about May 14, 2023, Power Brands contacted GBB's ingredient supplier to discuss the availability of two ingredients in GBB's drink.  *See id.* at ¶ 48.

Plaintiff filed the Amended Complaint on June 9, 2023, alleging a breach of the parties' Mutual NDA (Count I) as well as misappropriation of trade secrets under 18 U.S.C. § 1836 (Count II) and under the Florida Uniform Trade Secrets Act (Count III).  Defendants moved to dismiss Plaintiff's Amended Complaint in its entirety.

## II. LEGAL STANDARD

### A. Motion to Dismiss

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

#### A. Plaintiff's Breach of Contract Claim (Count I)

Defendants argue that Plaintiff fails to allege sufficient facts to support its breach of contract claim and, accordingly, moves to dismiss Count I of the Amended Complaint. *See* (Mot. (DE [26] at 19[1])). A breach of contract claim under Florida law requires proof of three elements: (1) the existence of a valid contract; (2) a material breach; and (3) damages. *Havens v. Coast Fla., P.A.*, 117 So.3d 1179, 1181 (Fla. 2d DCA 2013).

Defendants argue that Plaintiff's breach of contract allegations are too vague to support a valid breach of contract claim. *See* (Mot. (DE [26] at 19–21)). Defendants specifically contend that Plaintiff failed to demonstrate Defendants' use of the two purported trade secrets – the (i) revised ingredient list and (ii) product-specific manufacturing information. *See id.* As for the revised ingredient list, Defendants maintain that Plaintiff fails to allege that a "subset of ingredients, or any single ingredient, is confidential." *Id.* at 20. Defendants additionally argue that Plaintiff has not alleged that Defendants used every ingredient in the revised ingredient list, as required to state a breach of contract claim based on a combination trade secret. *See id.* (citing *Vital State Canada, Ltd. v. DreamPak, LLC*, 303 F. Supp. 2d 516, 529 (D.N.J. 2003)). While Defendants acknowledge that Plaintiff identifies a "single, nameless ingredient," Defendants nevertheless argue that the Amended Complaint fails to allege that the ingredient is confidential under the terms of the NDA. (Mot. (DE [26] at 20)).

Defendants' arguments misstate the Amended Complaint. Plaintiff's Amended Complaint clearly states that GBB's revised ingredient list is not generally known to the

---

[1] All page numbers reference the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

public.  *See* (Am. Compl. (DE [19] at ¶ 25 ("[t]he revised ingredient list and the way in which the ingredients are combined, each a trade secret . . . are not generally known by the public."); ("[t]o be clear, the [revised ingredient list and ingredient combination] was not generally known . . . and is not contained in any of GBB's patents.").  And, as Defendants acknowledge, Plaintiff alleges that Defendants included a "minimum of one [] ingredient" in their formula that "could only have come from GBB" and is, as Plaintiff contends, a "key element" of GBB's drink formula.  (Am. Compl. (DE [19] at ¶ 47)). Construing the allegations in Plaintiff's favor, this Court understands the "key" ingredient to be among the ingredients in Plaintiff's revised ingredient list.  *See id.* (indicating that Plaintiff shared the key ingredient "only because of the existence of the Mutual NDA."). Nor is this Court persuaded by Defendants' argument that Plaintiff must demonstrate Defendants' use of "each and every element in the combination."  (Mot. (DE [26] at 20)). Defendants' cited authority, *Vital State Canada, Ltd.*, concerned cross-motions for a preliminary injunction where the defendant, in seeking to protect its combination trade secret, conceded that "a lot of the individual aspects . . . in and of themselves are not trade secrets . . . [I]t is the collection of these items that forms the technology."  *See* 303 F. Supp. 2d at 529.  Ultimately, the Court concluded that the defendant fell short of showing a misuse of its combination of elements where the evidence "d[id] not show every element of the combination claimed as a trade secret."  *Id.* at 530.  An appellate court recently rejected such reasoning in *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 53 F.4th 368 (6th Cir. 2022).  There, the Sixth Circuit concluded that trade-secrets law does not necessarily require "showing acquisition of each atom of a combination trade secret."  *Caudill Seed & Warehouse Co., Inc.*, 53 F.4th at 385.  In this case, GBB alleges that Defendants have prepared a "parallel program us[ing] sixteen (16)

7

ingredients, of the nineteen (19) ingredients . . . that are identical to the ingredients in GBB's drink." (Am. Compl. (DE [19] at ¶ 45)).  Nowhere in the Amended Complaint does Plaintiff allege that all nineteen of the ingredients are necessary to create a parallel program, or competitor drink, and this Court sees no reason to impose such a requirement.  *See Caudill Seed & Warehouse Co., Inc.*, 53 F.4th at 385 ("Trade-secrets law does not demand a mirror-image between the misappropriated secrets and the eventual product derived from them.") (citing Restatement (Third) of Unfair Competition § 40 cmt. c (Am. L. Inst. 1995)).  As such, Plaintiff has pleaded the confidential nature of the revised ingredient list with requisite specificity.

Defendants challenge Plaintiff's second alleged trade secret – "information gathered by Defendants" for "learning the methods and techniques of combining the ingredients and manufacturing the drink" – as insufficiently pleaded.  (Mot. (DE [26] at 20)) (citing Am. Compl. (DE [19]) at ¶ 24)).  Defendants contend that Plaintiff's references to Defendants' "study," "research and development program," and "parallel program" are too vague to support a plausible breach of contract claim absent further "factual content". *See* (Mot. (DE [26] at 21))(quoting *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352-FTM-29, 2013 WL 6332971, at *1 (M.D. Fla. Dec. 5, 2013)).  This Court disagrees.  Plaintiff alleges a specific instance – a visit on or around November 7, 2022 with Defendants at GBB's manufacturing plant.  *See* (Am. Compl. (DE [19] at ¶ 28)).  On that day, according to the Amended Complaint, GBB demonstrated the "precise methods, exact ingredients, techniques, formulas, and equipment" used by GBB to formulate its proprietary drink.  *Id.*  Plaintiff also adds, upon information and belief, that Defendants engaged Power Brands to assist them in creating a "competitor product."  *Id.* at ¶ 48.  Plaintiff further alleges that Power Brands contacted GBB's supplier of ingredients to discuss the availability of two

specific ingredients in GBB's drink. *See id.* Finally, Plaintiff asserts that Defendants "would never have known" of the ingredients "but for GBB's disclosure to Defendants" under the Mutual NDA. *Id.* From the above, it is apparent, at least to this Court, that Plaintiff takes issue with Defendants' development of a competing drink, which relies on most of the same ingredients (and methods for combining such ingredients) as Plaintiff's proprietary beverage. Plaintiff's allegations "sufficiently put Defendant[s] on notice of the claim against it and the grounds upon which that claim rests," and is all that is required at this stage. *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1295 (M.D. Fla. 2018).

### B. Misappropriation of Trade Secrets (Counts II and III)

Defendants similarly argue that Plaintiff fails to state claims for trade secret misappropriation under 18 U.S.C. § 1836 (Count II) and under the Florida Uniform Trade Secrets Act (Count III). (Mot. (DE [26] at 11–18)).

Plaintiff alleges a misappropriation of trade secrets under 18 U.S.C. § 1836 (the "Defend Trade Secrets Act" or "DTSA") and the Florida Uniform Trade Secrets Act (the "FUTSA"). To bring a viable claim under the DTSA, Plaintiff must plausibly allege that it (i) "possessed information of independent economic value" that (a) "was lawfully owned by" the plaintiff and (b) for which the plaintiff "took reasonable measures to keep secret," and (ii) the defendant "used and/or disclosed that information," despite (iii) "a duty to maintain its secrecy." *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018). Similarly, "[t]o prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018). As with DTSA claims, to qualify as a "trade secret" under FUTSA plaintiff must allege that the

9

information "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Fla. Stat. § 688.002(4). The allegedly trade secret information must also be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* The Eleventh Circuit has acknowledged that DTSA and FUTSA claims "largely mirror[]" each other. *Compulife Software, Inc. v. Newman*, 959 F.3d 1288, 1311 n. 13 (11th Cir. 2020). This Court accordingly considers Plaintiff's DTSA and FUTSA claims together.

Courts adjudicating FUTSA cases have required a plaintiff to "identify with reasonable particularity the trade secrets at issue before proceeding with discovery." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016). "However, to satisfy this requirement at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *Id.* (citing *Twombly* 550 U.S. at 555–56; other citations omitted). Nevertheless, to state a claim with "sufficient particularity," a plaintiff must do more than merely "identify broad categories of information, such as financial and technical data." *Id.* at 849.

Defendants contend that Plaintiff cannot maintain actions for misappropriation of trade secrets under the DTSA and FUTSA because Plaintiff fails to (i) identify the alleged trade secrets with sufficient particularity; (ii) allege any economic value for the misappropriated information; and (iii) show how the "manufacturing information" was misappropriated by Defendants. Defendants' first and third arguments fail for many of the same reasons discussed above. Plaintiff has sufficiently identified two trade secrets – the revised ingredients list and the specific manufacturing information imparted to

Defendants during a November 2022 visit with Plaintiff's manufacturer. To use Plaintiff's own words, the Amended Complaint is "as direct as it can possibly be without giving away its secret to anyone with a PACER account." (Pl.'s Opp. (DE [28] at 14)). In any event, "whether something is a trade secret is a question typically 'resolved by a fact finder after full presentation of evidence from each side.'" *Compulife Software, Inc.*, 959 F.3d at 1311 (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288–89 (5th Cir. 1978)[2]). Plaintiff has likewise alleged Defendants' misappropriation of trade secrets with requisite particularity. Per the Amended Complaint, Defendants "knew or should have known that the Confidential Information and trade secrets obtained by Defendants constituted trade secrets belonging to GBB," which Defendants were "not authorized to use . . . outside of the limited Permitted Use specified in the Mutual NDA." (Am. Compl. (DE [19] at ¶ 65)). Nevertheless, as Plaintiff alleges, information within Defendants' February 14, 2023 Press Release drew directly from "Defendants' receipt of confidential and proprietary information from GBB." *Id.* at ¶ 42. And, as discussed above, Plaintiff alleges that Defendants have started to develop a "competitor product" which relies on many of the same ingredients as Plaintiff's proprietary formula, including one "key element" that Defendants only learned of "because of the existence of the Mutual NDA." *Id.* at ¶ 47–48.

Defendants' second argument, that Plaintiff fails to allege that its trade secrets "derive[] economic value from not being readily ascertainable by others," likewise fails to persuade this Court. (Mot. (DE [26] at 15)) (citing *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001)). According to Defendants,

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent former Fifth Circuit decisions handed down prior to September 30, 1981.

11

Plaintiff's allegations that its trade secret information is "extremely valuable," is too vague and conclusory to support Plaintiff's claims.  *See* (Mot. (DE [26] at 13–14)) (citing Am. Compl. (DE [19] at ¶ 20)).  Equally insufficient, Defendants argue, is Plaintiff's allegation that "multiple potential serious investors of GBB pull[ed] out of contemplated multi-million dollar deals."  (Mot. (DE [26] at 14)) (citing Am. Compl. (DE [19] at ¶¶ 52, 69)).  According to Defendants, Plaintiff fails to allege that it engaged with "multiple potential serious investors" in dealings that related to its trade secrets.

Drawing all inferences in Plaintiff's favor, this Court concludes that Plaintiff has sufficiently demonstrated that its trade secrets derived economic value from not being readily ascertainable by others.  Plaintiff alleges that the unidentified investors pulled out of the contemplated deals "*because of* Defendants' announcements (and the promotional content) related to the development and planned future launch of a competing product that utilizes GBB's confidential information."  (Am. Compl. (DE [19] at ¶ 52)) (emphasis added).  According to Plaintiff, the multiple serious investors –which, at one time, even included Defendants– discontinued discussions with Plaintiff once they learned of Defendants' competitor product.  *See* (Am. Compl. (DE at ¶¶ 52, 69)).  Plaintiff accordingly suggests, in a manner sufficient to survive dismissal, that its product derived economic value from its proprietary nature.  Put simply, even the threat of a competing product was enough to cause GBB's potential investors to lose interest in its product.  Therefore, Plaintiff's allegations go beyond alleging that its trade secret information is "highly valuable" and, accordingly, survive Defendant's Motion to Dismiss.  *Cf Del Monte Fresh Produce Co.*, 2012 WL 12855462, at *3 (finding allegations that information is "highly valuable," without more, provides "insufficient facts to determine whether the information rises to the level of a trade secret.").  Accordingly, it is hereby

12

**ORDERED** and **ADJUDGED** that Defendants FSD Biosciences, Inc., and FSD Pharma, Inc.'s Motion to Dismiss Plaintiff GBB Drink Lab, Inc.'s First Amended Complaint (DE [26]) is **DENIED**.  Defendants shall answer the Amended Complaint within fourteen (14) days of this Order.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida this 8th day of January 2024.

                                                           *[signature]*
                                                        RAAG SINGHAL
                                                        UNITED STATES DISTRICT JUDGE

Copies to Counsel of Record via CM/ECF