**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

GBB DRINK LAB, INC.,

        Plaintiff/Counterclaim Defendant,          CASE NO. 23-CV-60800

v.

FSD PHARMA INC. and FSD
BIOSCIENCES INC.,

        Defendants/Counterclaimant.

_____

FSD PHARMA INC.,

        Third-Party Plaintiff,

v.

JOSEPH ROMANO,

        Third-Party Defendant.

**DEFENDANTS FSD PHARMA INC. AND FSD BIOSCIENCES INC.'S**
**MOTION FOR SUMMARY JUDGMENT AND**
**<u>SUPPORTING MEMORANDUM OF LAW</u>**

Defendant/Counterclaimant/Third-Party Plaintiff FSD Pharma Inc. ("FSD Pharma") and Defendant FSD Biosciences Inc. ("FSD Biosciences" and together with FSD Pharma, "FSD") file this Memorandum of Law in support of their Motion for Summary Judgment.

## I.    <u>INTRODUCTION</u>

This case is, and always has been, a sham. GBB Drink, Lab, Inc. ("GBB"), upset that FSD backed out of a deal to acquire its assets (after GBB significantly changed the terms of the deal on the eve of closing), has used this purported trade secrets lawsuit to shakedown FSD, a would-be competitor, to try and keep FSD from competing against GBB with its own independently developed product, and force it to pay tens of millions of dollars to GBB without any basis.

GBB alleges that FSD used information disclosed during the parties' negotiations in breach of a non-disclosure agreement, and in violation of federal and state law relating to the misappropriation of trade secrets. But GBB has failed to adduce *any* evidence that any proprietary or confidential GBB information was ever misappropriated or in any way misused by FSD – a requisite element of both the federal and Florida trade secrets statutes – or that GBB suffered any damages as a result. Worse, it is undisputed that GBB ███████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████ Nonetheless, GBB asserts these claims anyway, and its theory of liability has been a constant moving target. And every time it changed, it became less tethered to the actual facts. Only now, after the full record has been developed, has it become abundantly clear that GBB never had any factual basis to bring this lawsuit, and FSD is entitled to summary judgment for the following reasons:

<u>First</u>, GBB has no right to pursue any of its claims, having expressly ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Accordingly, GBB lacks standing to pursue any of the claims asserted in this case.

**Second**, GBB has not suffered any cognizable damages. It is undisputed that GBB does not make, use or sell any product, and GBB has adduced no evidence to support the ever-evolving damages theories it claimed in discovery. Indeed, GBB's own John Gulyas, designated as GBB's corporate representative to testify about damages, admitted that he did not know ████████

████████████████████████████████████████████████████

████████████████████

**Third**, there is no evidence that FSD misappropriated or in any way misused any confidential or proprietary GBB information. Rather, the evidence shows ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Nor is there any evidence that FSD ever used GBB's alleged formulas or mixing methods when developing its own product. Moreover, GBB failed to take adequate steps to maintain the alleged secrecy of its alleged trade secrets. Indeed, the record is replete with examples of GBB allowing its alleged trade secret information to be shared with outsiders, with no protection whatsoever.

For any one of these three reasons, FSD is entitled to summary judgment in its favor.

## II.    STATEMENT OF FACTS

Pursuant to S.D. Fla. Local Rule 56.1, FSD is filing its Statement of Material Facts contemporaneously with this Motion.  All exhibits thereto are also incorporated by reference.

## III.    STANDARD OF REVIEW

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A factual dispute is not "material" unless it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is not "genuine" unless the evidence would allow a reasonable factfinder to return a verdict in favor of the non-moving party. *Id.* In demonstrating the absence of a genuine issue of material fact, the moving party can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (U.S. 1986). After the movant has satisfied its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (U.S. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

## IV.  **ARGUMENT**

### A.  **Relevant Law Related to GBB's Claims**

In its First Amended Complaint, GBB advances three claims against FSD: (1) breach of the NDA; (2) misappropriation of trade secrets under 18 U.S.C. § 1836 (the "Defend Trade Secrets Act" or "DTSA"); and (3) misappropriation of trade secrets under the Florida Uniform Trade Secrets Act, § 688.001, *et seq.* (the "FUTSA"). In Florida, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Ferretti v. Nova Se. Univ., Inc.*, 604 F. Supp. 3d 1330, 1333 (S.D. Fla. 2022) (citations omitted). To show a breach, "a plaintiff plausibly must allege that defendant 'failed to perform a duty that goes to the essence of the contract.'" *Melvin v. Walmart Inc.*, No. 5:20-CV-51-MW/MJF, 2021 WL 5889995, at *11 (N.D. Fla. Nov. 9, 2021) (citations omitted).

The DTSA requires GBB to plead that it (1) possessed information of independent economic value that (a) was lawfully owned by GBB and (b) for which GBB took reasonable measures to keep secret, and (2) FSD used and/or disclosed that information, despite (3) a duty

to maintain its secrecy. *See* 18 U.S.C. § 1836, *et seq*. The FUTSA requires GBB to plead that it (1) "possessed a 'trade secret' and (2) the secret was misappropriated." *Surfaces, Inc. v. Point Blank Enter.*, No. 20-62648-CIV-SMITH, 2022 WL 18956038, at *3 (S.D. Fla. Dec. 27, 2022) (citation omitted). Like the DTSA, under the FUTSA, information can only qualify as a "trade secret" if it "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and must be "subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018). The Eleventh Circuit has recognized that causes of action under the DTSA and FUTSA "largely mirror[]" each other. *Compulife Software, Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020).

### B.   GBB Does Not Have Standing to Pursue Its Claims Because It Transferred Them to Jupiter Wellness n/k/a Safety Shot

To establish standing, a plaintiff must demonstrate: (1) an injury in fact, which is a concrete and particularized harm; (2) a causal connection between the injury and the challenged conduct of the defendant, meaning the injury must be fairly traceable to the defendant's actions and not the result of actions by a third party; and (3) redressability, indicating that it is likely that the injury will be addressed by a favorable court decision. *Bouldry v. C.R. Bard, Inc.*, 909 F. Supp. 2d 1371, 1374 (S.D. Fla. 2012) (citations omitted). A party that assigns its right to a claim lacks standing to pursue that claim. *See PB Legacy, Inc v. Am. Mariculture, Inc.*, 2020 WL 1820509, at *7 (M.D. Fla. Apr. 10, 2020) ("Since Counts II through IX all constitute claims which have now been assigned to TB Food, and since an assignee may prosecute the cause of action in its own name, PB Legacy no longer has any interests in such claims. PB Legacy has neither constitutional standing to assert the claims nor real party in interest status, while TB Foods has both.").

Here, there is no dispute that GBB ███████████████████████. (Ex. 5, Jupiter

APA, § 2.1(a)). As part of that transaction, Jupiter Wellness purchased from GBB ████

████████████████████████████████████████████████████████

*Id.* § 2.1(a)(xx) (emphasis added). The purchased assets also expressly included all ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ *Id.*, Schedule 1 at 43 (emphasis added); Ex. 6, Gulyas Dep. 170:6-11.

The foregoing establishes that GBB sold to Jupiter Wellness not only ████████████, but

also ████████████████████████████████████████████████████

████████████████████████████████. Because GBB sold to Jupiter

Wellness ████████████████████████████████████████████

████████████████████████—GBB lacks standing to pursue this litigation

against FSD, and FSD is therefore entitled to entry of summary judgment.

    **C.**    **GBB Has Failed to Prove the Existence of Damages**

Given that GBB lacks standing to pursue its claims, the Court need not address FSD's

remaining arguments related to the substance of those claims. But, even if the Court did consider

the elements of each claim, FSD would still be entitled to summary judgment.

As discussed in detail below, GBB's theories of its purported damages have changed

repeatedly. Specifically, GBB has at various times claimed: (1) $53 million in damages; (2)

████████████████████████████████████████████████████

████████████████████████████; (3) ██████████████████████

████████████████████████████ (4) ██████████████████████

████████████████████████████████████████████; and

(5) ████████████████████████████████████

Some of these theories have apparently been abandoned, but they all share one thing in common—they are unsupported by *any* evidence of record. Most notably, GBB sold ██████████ ████████████████████████████████████████ . Even if GBB had not expressly agreed ██████████████████████████████ ████████████████ GBB still would not be entitled to any damages associated with any alleged misuse of the trade secrets or confidential information, because ████████████████████ ████████████████████ And GBB has failed to identify any alleged damages incurred before ████████████████ Therefore, FSD is entitled to summary judgment on all of GBB's claims for damages.

1.     **GBB's Corporate Representative Could Not Identify Any of the Damages GBB is Seeking, Let Alone $53 Million in Alleged Damages**

GBB's Gulyas was designated as GBB's corporate representative under Federal Rule of Civil Procedure 30(b)(6) to testify about GBB's claimed damages, but he could not even identify ████████████████████████████████████ . Ex. 6, Gulyas Dep. 193:6-16 ████████████████████████████████████ ████████████████████████████████████ ████████ .[1] When pressed further, Gulyas testified that GBB was seeking ████████████ ████████████████████████████████████ ████████████████████████████████ *Id.* at 194:23-

_____

[1] ████████████████████████ ████████████████████████ing ████ ████████████████████ . GBB's corporate designees on other topics testified similarly. *See, e.g.* Ex. 7, Boon Dep., 323:10-334:20 ████████████████ Regardless of whether they were just woefully unprepared for their corporate depositions, or simply did not know the answers to questions, GBB is stuck with their testimony and the fact that they could not provide supporting evidence for GBB's alleged damages.

195:1. Gulyas, however, could not explain how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Instead, Gulyas testified only that t▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but admitted he had never spoken with ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮, and was unaware that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 194:6-16; *see also* Ex. 25,

Gauthier Report.

Gulyas then pivoted again and said that it was actually ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮, but he did not even know ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮. Ex. 6, Gulyas Dep. 196:21-197:2. Gulyas also did not know why ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at

197:16-198:22; *see also* Ex. 26, GBB's Fourth Amended Responses and Objections to FSD's First

Set of Interrogatories to Plaintiff ("GBB Fourth Interrogatory Responses") at 20, ¶ 19.

During discovery, GBB did produce a▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 27, August 30, 2025

Stanton Park Valuation. But neither Jarrett Boon, GBB's corporate designee identified to address

GBB's projections and the Stanton Park report, nor Jon Taylor, the author of the report, could

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 7, Boon Dep. 335:23-354:5 ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. 28, Taylor Dep. 35:10-21 ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Critically, the Stanton Park report also makes no mention of

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████████

███████████████████████████████████ And Stanton Park's own corporate designee

conceded that ███████████████████████████████████████████████

██████. Ex. 28, Taylor Dep. 120:15-121:12.

Accordingly, GBB has failed to adduce <u>any</u> evidence to support its claim that FSD's

alleged misappropriation of its trade secrets somehow caused GBB $53 million in damages.

> **2.    There is No Evidence That The Price Jupiter Wellness Paid for GBB's Assets Was Negatively Affected by FSD**

Despite FSD's Interrogatory 19 expressly asking GBB to ██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████ *See, e.g.*, Ex. 26, GBB Fourth Interrogatory Responses at 20, ¶ 19.

Nonetheless, in the Gauthier Report served on May 29, 2025, GBB's proposed damages expert set

forth damages models based on ████████████████████████████████████████

███████████████████████████████. Ex. 25, Gauthier Report at 10-15.

There is, however, <u>no</u> evidence that ████████████████████████████████

███████████████████████████████████████ This was confirmed by the

testimony of Gulyas, who was GBB's corporate representative designated to testify about both

GBB's damages <u>and</u> the Jupiter Wellness transaction. *See* Ex. 6, Gulyas Dep. 7:12-9:2; 207:15-19

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ ; *id.* at 178:10-22 ██████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ ; *id.* at 165:23-25 ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ In fact, Gulyas could not even explain how ████████████████

████████████████████████████ . *Id.* at 166:18-20 ████████████

████████████████████████████████████

Moreover, the Gauthier Report purports to calculate damages by ████████████

████████████████████████████████████████████████

████████████████████████████████████████ Ex. 25,

Gauthier Report at 10-15. GBB, of course, is not seeking damages related to ████████████

████████████████████████████████████████████████

██████████████████████ Neither Gauthier nor anyone else on behalf of GBB ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ .

In the absence of <u>any facts</u> indicating that FSD's alleged misappropriation impacted ████████

████████████████████ , GBB cannot pursue damages based on ████████████

████████████████████████████████

### 3.    GBB Cannot Seek Unjust Enrichment or Reasonable Royalty Damages Because it Does Not Own the Intellectual Property at Issue

The other theory advanced by GBB's expert (though not GBB itself) is that GBB is entitled

to ████████████████████████████████████████████████

███████████████████████████████████████████████████████. Ex. 25, Gauthier Report at

15-25. Again, however, it is ████████████████████████████████████

████████████████████████████████████████████████████████████████

As a result, even if ████████████████████████ were an appropriate measure of

damages for any alleged misappropriation, those damages could not be sought by GBB ***as it***

████████████████████████████████████████████████████████████████

████████. *See* Ex. 6, Gulyas Dep. 170:6-11 ███████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████; *id.* at 170:17-172:1 █████████

████████████████████████████████████; *see also Pioneer Int'l (USA), Inc. v. Reid*,

2007 WL 9718721, at *6 (M.D. Fla. Oct. 9, 2007) (concluding that plaintiff failed to establish a

substantial likelihood of success on its FUTSA claim when it failed to demonstrate that it owned

the trade secrets); 18 U.S.C. § 1836 (specifying that the DTSA requires the plaintiff to plead that

it lawfully owned the trade secret); *WWMAP, LLC v. Birth Your Way Midwifery*, 711 F. Supp. 3d

1313, 1319 (N.D. Fla. 2024) (recognizing that the DTSA defines the "owner" of a trade secret as

"the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade

secret is reposed ....") (citing 18 U.S.C. § 1839(4); *Highland Consulting Grp., Inc. v. Minjares*, 74

F.4th 1352, 1358 (11th Cir. 2023)).

        **4.**    **GBB Failed to Identify Any Evidence That FSD Caused It to Lose Investments From EBI or Greentree**

In its response to FSD's Interrogatories, GBB claims that it ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 26, GBB Fourth Interrogatory Responses at

20, ¶ 19. During his deposition, however, Gulyas did not even know if ██████████████████



Ex. 6, Gulyas Dep. 196:7-10 ████████████████████████████████

██████████████████████████████████████████; *id.* at 199:13-18 ███

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████

EBI's own corporate representative, Joseph Firestone, confirmed that no purchase agreement between EBI and GBB had ever been negotiated or drafted, and that EBI was never even close to completing a deal for GBB's assets. Ex. 29, Firestone Dep. 103:3-20. Firestone testified that before EBI would agree to purchase anything, it would have conducted due diligence and an audit (and EBI's auditors would have come up with a price and valuation), and an opinion from a patent attorney. *Id.* at 100:7-102:22. The record is clear that EBI was never going to purchase GBB's assets, and there is no causal link between its failure to do so and FSD's conduct.[2]

GBB's responses to FSD's Interrogatories also contend that ████████████████████



██████████████████████████████████████████████████████████████ Ex. 26, GBB Fourth Interrogatory Responses at 19, ¶ 17. This too is false. Greentree's corporate

---

[2] To make matters worse, the "$30 million" GBB claims EBI was going to pay was based on GBB's false representation to EBI that it had secured a $30 million offer from FSD, which EBI would have to match. In reality, FSD's offer to GBB was for $1 million in cash and FSD stock capped at a value of $11 million. Firestone was stunned to learn this during his deposition, as it made clear he was entirely misled by GBB. Ex. 29 at 93:19-21 ("The $30 million price was the offer [Gulyas] was getting for -- from FSD, and that was the offer he was going to match with us."); *id.* at 95:15-25 ("Q: Are you aware that FSD offered to acquire GBB for 1 million cash and 11 million in stock? A: No. Q: Is this the first time you're hearing that? A: Yeah, that's a big difference. Q: Why do you think Mr. Gulyas told you 30 million? A: That's what he told me the offer was from FSD. And he had a 53 million [third-party] valuation, so it was really like a reduction in price based on the valuation."); *id.* at 97:6-12 (after reviewing the draft FSD APA: "Q: Is this the first time you're learning of the purchase price of the FSD deal? A: Yeah. I never seen this or heard about this price ever. Q: If you had, would EBI still have offered 30 million? A: No, there's no way.").

representative, Robert Christian "Chris" Cottone, testified unequivocally that Greentree also *never intended to invest anything in GBB*. Ex. 30, Cottone Dep. 48:23-25 ("Q: Was Greentree going to invest[] 10 million into GBB? A: Oh, into GBB? No."). Gulyas, GBB's corporate designee on damages, did not even know if . Ex. 6, Gulyas Dep. 204:8-11 ; *id* at 206:7-11

GBB has failed to identify any evidence that it lost investments from EBI or Greentree as a result of FSD's conduct, let alone evidence that would create a genuine issue of fact for trial.

**5. GBB Has Abandoned and/or Cannot State a Claim Related to the Alleged Decrease in Safety Shot's Stock Price**

In describing its alleged damages, GBB also contends in its Interrogatory responses that  Ex. 26, GBB Fourth Interrogatory Responses at 20, ¶ 19. During his deposition, Gulyas initially testified that GBB is <u>not</u> seeking damages related to . Ex. 6, Gulyas Dep. 202:7-12 . Gulyas then attempted to recant and state that GBB *was* seeking such damages, but he was forced to admit that



██████████████████████████████████████████. *Id.* at 203:25-204:7 (████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ *id.* 203:25-204:7 ████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████

Finally, even if GBB could demonstrate that FSD's conduct caused ████████████

████████████████████████—and it cannot—GBB does not have standing to bring a claim for

██████████████████████. Under Florida law, a shareholder may only bring an action directly

if "(1) there is a direct harm to the shareholder or member such that the alleged injury does not

flow subsequently from an initial harm to the company and (2) there is a special injury to the

shareholder or member." *Dinuro Invs., LLC v. Camacho*, 141 So.3d 731, 739-40 (Fla. 3d D.C.A.

2015). GBB's alleged damages of a ███████████████████████████████████████

██████████████████████████████████. Even if such harm exists, GBB has not shown

how those damages are ██████████████████████████████████████████████

██████

**D.    GBB Failed To Adduce Evidence Necessary To Support its Claims**

**1.    GBB Has Failed to Identify Evidence that FSD Used Its Confidential Information or Misappropriated Its Alleged Trade Secrets**

Information that is generally known or readily accessible to third parties cannot qualify for

trade secret protection under the FUTSA or DTSA. *Mortgage Now, Inc. v. Stone*, 2009 WL

4262877 (N.D. Fla. 2009); *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407,

1410 (11th Cir. 1998); *Bestechnologies, Inc. v. Trident Environmental System, Inc.*, 681 So. 2d

1175, 1176 (Fla. Dist. Ct. App. 2d Dist. 1996); *WWMAP, LLC v. Birth Your Way Midwifery*, 711 F. Supp. 3d 1313, 1320 (N.D. Fla. 2024) (citing 18 U.S.C. § 1839(3)(B)). In addition, the NDA signed by FSD and GBB expressly excludes from the definition of "Confidential Information" "any information which (i) is now, or hereafter becomes . . . generally known and made generally available in the public domain." Ex. 4, GBB Am. Compl. at Ex. A (the NDA) ¶ 2.

Moreover, GBB cannot prevail on its DTSA or FUTSA claims unless it identifies evidence that FSD actually misappropriated the alleged trade secrets at issue. *Healthcare Resources Management Group, LLC v. EcoNatura All Healthy World, LLC*, 2021 WL 4989941, at *12 (S.D. Fla. 2021) (recognizing that misappropriation occurs under the DTSA "when: (1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means; (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent; or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent.") (citations and quotations omitted); *id.* at *12 (recognizing that misappropriation under the FUTSA "includes acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means as well as use of that trade secret without express or implied consent by a person who [ ] used improper means to acquire knowledge of the trade secret; or knew or had reason to know that her or his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.") (citations and quotations omitted).

Here, GBB's position on what purportedly constitutes its confidential information or trade secrets has been ambiguous and inconsistent, but GBB has variously described them as: (1) ingredients or some combination of ingredients (which GBB refers to as the "revised ingredient list" in its First Amended Complaint); (2) mixing or blending methods; (3) manufacturing

methods; and (4) ████████. Ex. 4, First Am. Compl. ¶ 24; Ex. 7, Boon Dep. 40:21-41:1, 41:6-42:6; Ex. 26, GBB Fourth Interrogatory Responses at 3-4, ¶ 3.

Sandler, however, GBB's corporate representative on the scientific formulation of the beverage, *admitted* that ████████████████████████████████████████████

████████████████ Ex. 24, Sandler Dep. 14:4-14, 339:4-10 ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████.[3]

Sandler's testimony makes clear that ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████. As a result, any overlap between FSD's and GBB's ingredient lists is not evidence of a breach of the NDA or misappropriation. Moreover, Sandler admitted that ████

████████████████. *Id.* at 174:4-12 ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ (emphasis added). So contrary to GBB's claims that FSD misappropriated its confidential information to copy its formulation, GBB's own designee acknowledged that ████████████████████████████████

████████████████████████████████████████████

With respect to the remaining three alleged trade secrets—mixing or blending methods, manufacturing methods, and ████████—GBB has failed to identify *any* evidence that FSD

---

[3] Attached hereto as Exhibit 31 is Tab 1(c) of a spreadsheet demonstrative created during Sandler's deposition showing ████████████████. *See also* Ex. 24, Sandler Dep. at 297:9-340:8 ████████████████ Sandler testified that he ████████████████████████████████████████████████████████████████████ *Id.* 91:19-93:5; 339:12-22.

misappropriated, or even used, that information. Indeed, when asked how FSD is using the allegedly confidential or trade secret information, Sandler could not identify <u>any</u> evidence of misappropriation, and instead only speculated that, in his opinion,



Ex. 24, Sandler Dep. 171:18-172:15. Sandler's rank speculation is hardly evidence to defeat summary judgment.

Neither of GBB's other two designees, Gulyas and Boon, were able to identify Ex. 6, Gulyas Dep. 266:2-4 9 Ex. 7, Boon Dep. 59:19-60:22



█████████████████████████████████████ *id.* at 69:23-71:3 █████████████████

████████████████████████████████████████████████████.[4]

GBB also retained a chemist, Edward Brown, to provide an "expert" opinion on whether

█████████████████████████████████████████████████████████████████████████

██████. But Brown admitted during his deposition that: (1) ████████████████████

███████████████████████████████████████ (Ex. 32, Excerpts of Edward

Brown Dep. at 268:18-23); (2) ████████████████████████████████████████

████ (*id.* at 266:5-17); (3) ███████████████████████████████ (*id.* at 134:3-

12, 270:7-13); (4) ███████████████████████████████████████████████

(*id.* at 162:16-22); and (5) ██████████████████████████████████████

████████████████████████████. *Id.* at 269:6-24.[5] Without knowing or

opining on these fundamental facts necessary to demonstrate ███████████████████

Brown's opinions cannot preclude entry of summary judgment in FSD's favor.

Finally, FSD's Kotra ████████████████████████████████. Ex. 3, Kotra Dep.

39:25-40:7. He testified that ██████████████████████████, *id.* at 113:6-15, ████

██████████████████████████████████████████████████████████████████████

████████████████████, *id.* at 260:3-9, and that ████████████████████████████

███████████████████. *Id.* at 271:18-272:3.

In sum, GBB has failed to identify any evidence that FSD actually used or misappropriated

GBB's confidential information or trade secrets, and FSD is entitled to summary judgment on each

---

[4] Indeed, GBB's Amended Complaint makes clear that GBB's lawsuit was filed as a result of FSD's February 2023 press releases announcing FSD's intention to develop its own product. Ex. 4, ¶¶ 31-37. GBB speculated that FSD must have used GBB's confidential information. *Id.* ¶ 33; 47. But now that discovery has closed, GBB has adduced zero evidence that FSD's product, which was not launched to the market for another one and a half years, was based on any of GBB's confidential information.

[5] For these any other reasons, FSD is contemporaneously filing a *Daubert* motion to exclude Brown's opinions.

of GBB's claims for this reason as well.[6]

>  **2.     GBB Did Not Take Reasonable Measures to Maintain the Secrecy of Its Alleged Trade Secrets**

Even if GBB could establish that FSD used its information without GBB's consent, GBB *still* cannot prevail on either its DTSA or FUTSA claims unless it demonstrates that it took reasonable efforts to maintain the secrecy of its alleged trade secrets. *Healthcare Resources Management Group, LLC*, 2021 WL 4989941, at *11-12. Here, the record makes clear that GBB did <u>not</u> make such efforts.

First, on June 21, 2023, Brad Greer, ██████████████████████████████, Ex. 7, Boon Dep. 30:13-31:3, sent a spreadsheet entitled ███████████████████ to an individual named ████████, which contained ████████████████████████. Ex. 33, Email from B. Greer to ████████ (June 21, 2023, 3:14 PM). There is no evidence that ████████ ever signed an NDA or was otherwise obligated to keep this information confidential. When Boon was asked about ████████, he ██████████████████████████████████ ███████████████████. Ex. 7, Boon Dep. 186:17-187:17. *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300-01 (11th Cir. 2018)) (finding that the plaintiff failed to take reasonable efforts to maintain secrecy because, notwithstanding the plaintiff's contention that there was an "implicit understanding" to keep the information confidential, the plaintiff provided information to a party with no confidentiality agreement or restrictions); *Global Marine Exploration, Inc. v. Republic of France*, 696 F. Supp. 3d 1131, 1143 (N.D. Fla. 2023) (finding that the plaintiff (GME) failed to maintain secrecy when it shared

---

[6] Finally, even if both FSD Defendants were not entitled to summary judgment in their favor on all claims, the Court should still enter summary judgment as to the claims against FSD Biosciences—which is a non-operational entity—given GBB's failure to identify <u>any</u> evidence that FSD Biosciences ever had or used its alleged confidential information or trade secrets in any way. Indeed, there is literally no evidence in this case having anything to do with any conduct of FSD Biosciences.

the information with the defendant (FDHR) "without giving the FDHR any instructions about how to protect the information. Essentially, all GME did to protect its information was tell the FDHR that it didn't want the coordinates to be publicly divulged. That is not enough"). GBB's forwarding █████████ to outsiders (that its corporate designees █████████) with no protection whatsoever certainly falls short of taking reasonable steps to maintain secrecy.

Second, GBB permitted ██████████████████████

████████████████████████████████████████

████████████████████ Ex. 8, Romano Dep. 134:14-136:11, 144:23-146:19, 181:16-182:12 █████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████. There is no evidence that ████████████ ever signed an NDA or were otherwise obligated to keep any information related to GBB's drink confidential, even though GBB knew they were █████████████████████

Third, when asked how the ingredient list was protected, Boon testified that ████ ████████████████████████████████████████ ██████████. Ex. 7, Boon Dep. 53:18-54:12. But GBB did not █████ ████████████████████████████████████████ ██████████████ In fact, Boon did not know how █████████████,



and admitted that

. *Id.* at 54:24-55:16.

Fourth, Sandler, who worked on developing GBB's product, could not recall if

. Ex. 24, Sandler Dep. 190:25-191:3. And while he testified that

, *id.* at 205:15-207:20, Sandler could not say with certainty whether

. *Id.* 207:21-208:12

; *see also* Ex. 7, Boon Dep. 317:12-17

; *id.* at 318:6-10

Having failed to adequately protect its information, GBB cannot maintain that this information was adequately kept secret, a fact that is fatal to each of GBB's three claims.

V.     **CONCLUSION**

For all the foregoing reasons, FSD respectfully requests that the Court grant the Motion and enter an Order in the form attached herewith.

<u>**REQUEST FOR ORAL ARGUMENT**</u>

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully requests oral argument on their Motion for Summary Judgment. Defendants believe oral argument will help explain and narrow the key issues the Court will need to consider when resolving the Motion. Defendants estimate that argument would take one hour, with half an hour each being allotted to Defendants and Plaintiff.

Respectfully submitted,

**BLANK ROME LLP**

By: _/s/Michael R. Esposito_
Michael Esposito

Dated: July 21, 2025

Respectfully submitted,

**BLANK ROME LLP**

By: */s/Michael R. Esposito*
    Michael Esposito
    Florida Bar No. 37457
    Blank Rome LLP
    100 S. Ashley Drive, Suite 600
    Tampa, FL 33602
    Phone: (813) 255-2300
    Facsimile: (813) 830-7444
    Email:   Michael.Esposito@BlankRome.com

    Jason A. Snyderman (*pro hac vice*)
    John P. Wixted (*pro hac vice*)
    Timothy J. Miller (*pro hac vice*)
    Blank Rome LLP
    130 North 18th Street
    Philadelphia, PA 19103
    Email: Jason.Snyderman@BlankRome.com
    Email: John.Wixted@BlankRome.com
    Email: Timothy.Miller@BlankRome.com
    *Counsel for Defendants FSD Pharma, Inc.*
    *and FSD BioSciences, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on July 21, 2025, with the Clerk of the Court by using the CM/ECF System. I also certify that the foregoing document is being served this day on all counsel of record via transmission of the Notice of Electronic Filing generated by CM/ECF.

*/s/ Michael R. Esposito*
Michael R. Esposito
