No. 26-___

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

In re:  FSD BIOSCIENCES, INC., and FSD PHARMA, INC.

On Petition for Writ of Mandamus to the United States District Court
for the Southern District of Florida, Case No. 23-60800-CIV-DAMIAN
(Hon. Melissa Damian)

**PETITION FOR WRIT OF MANDAMUS**

Jeffrey S. Beelaert
GIVENS PURSLEY LLP
601 West Bannock Street
Boise, Idaho 83701
(208) 388-1200
jbeelaert@givenspursley.com

*Counsel for Petitioners*

## Certificate of Interested Persons and
## Corporate Disclosure Statement

Under Eleventh Circuit Rule 26.1-1, Rule 26.1-2, and Rule 26.1-3, Petitioners certify that the following persons have, or may have, an interest in the outcome of this case:

1. Beelaert, Jeffrey S., Givens Pursley LLP, counsel for Defendants-Petitioners

2. Brehnan, Alexander, Wilson Sonsini Goodrich & Rosati, former counsel for Defendants-Petitioners

3. Damian, Melissa, Judge, United Stated District Court for the Southern District of Florida

4. Esposito, Michael R., Blank Rome LLP, former counsel for Defendants-Petitioners

5. FSD Biosciences, Inc., Defendant-Petitioner

6. FSD Pharma, Inc., Defendant-Petitioner

7. Gallinat, Nathan M., Greenspoon Marder LLP, counsel for Plaintiff-Respondent

8. GBB Drink Lab, Inc., Plaintiff-Respondent

9. Gray, Don Z., Givens Pursley LLP, counsel for Defendants-Petitioners

10. Heitner, Darren A., Heitner Legal, P.L.L.C., counsel for Plaintiff-Respondent

i

11.     Hudson, Danielle, Blank Rome LLP, former counsel for Defendants-Petitioners

12.     Jaffe, Jordan, Wilson Sonsini Goodrich & Rosati, former counsel for Defendants-Petitioners

13.     Koff, Chelsea E., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., former counsel for Defendants-Petitioners

14.     Lacey, Catherine, Wilson Sonsini Goodrich & Rosati, former counsel for Defendants-Petitioners

15.     Lazopoulos Friedman, Lindsey, Holtzman Vogel Baran Torchinsky & Josefiak PLLC, counsel for Defendants-Petitioners

16.     Levicoff, Robert C., Blank Rome LLP, former counsel for Defendants-Petitioners

17.     Miller, Timothy J., Blank Rome LLP, former counsel for Defendants-Petitioners

18.     Monteverde, Michael A., Zinober Diana, P.A., counsel for Third-party Defendant and Counter Defendant Joseph Romano

19.     Nicholson, Megan C., Greenspoon Marder LLP, counsel for Plaintiff-Respondent

20.     Pinkert, Mark I., Holtzman Vogel Baran Torchinsky & Josefiak PLLC, counsel for Defendants-Petitioners

21.     Romano, Joseph, former Third-party Defendant and Counter Defendant (dismissed from the case)

22.     Schwartz, Jonathan C., Schwartz Legal, PLLC, counsel for Third-party Defendant and Counter Defendant Joseph Romano (dismissed from the case)

23.     Snyderman, Jason A., Blank Rome LLP, former counsel for Defendants-Petitioners

24.     Strauss, Jared M., Magistrate Judge, United Stated District Court for the Southern District of Florida

25.     Topper, Nicole R., Blank Rome LLP, former counsel for Defendants-Petitioners

26.     Urias, Sharon A., Greenspoon Marder LLP, counsel for Plaintiff-Respondent

27.     Wixted, John P., Blank Rome LLP, former counsel for Defendants-Petitioners

28.     Zann, Lawren A., Greenspoon Marder LLP, counsel for Plaintiff-Respondent

/s/ Jeffrey S. Beelaert
Jeffrey S. Beelaert

*Counsel for Petitioners*

iii

## Request for Oral Argument

Under Rule 34(a)(1) of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 34-1, Petitioners request oral argument.

Petitioners—FSD Biosciences and FSD Pharma, defendants below—argued in summary judgment briefing that Plaintiff GBB Drink Lab lacked standing after it sold all of its assets to Jupiter Wellness while this case was pending. In that transaction, GBB sold, and Jupiter Wellness purchased, "all rights, claims and causes of action against third parties arising either before or after the Closing Date." Appendix (A) 235 (quoting Section 2.1(a) of the Asset Purchase Agreement). The sale specifically included all "claims and causes of action with respect to [the] Intellectual Property" at issue in this case "whether accruing before, on, or after the date hereof, including all rights to damages, restitution, and injunctive and other legal or equitable relief for past, present and future infringement, misappropriation, or other violation thereof." *Id.* (quoting Schedule 1 of the agreement)

Reviewing this unambiguous transfer, the district correctly concluded that "GBB no longer had standing" to pursue its claims after the transfer was completed. A241.

Because GBB lacked standing, the district court lacked subject matter jurisdiction to proceed. It had no authority to continue. Here, though, the district court allowed GBB to *restore* its standing with an amendment to the Asset Purchase Agreement signed in February 2026,

iv

years after the original transfer occurred and after Petitioners properly challenged GBB's standing.  A243.  When a party lacks standing, courts are powerless to act.  The district court should have dismissed GBB's claims for lack of subject matter jurisdiction.

Standing is a bedrock constitutional requirement.  Petitioners request oral argument to assist the Court in addressing this jurisdictional prerequisite and to answer any questions about binding precedent or relevant facts.

# Table of Contents

Certificate of Interested Persons and
    Corporate Disclosure Statement.......................................................i

Request for Oral Argument.....................................................................iv

Table of Contents .................................................................................vi

Table of Authorities..............................................................................viii

Introduction ...........................................................................................1

Jurisdictional Statement..........................................................................3

Relief Sought .........................................................................................3

Issues Presented......................................................................................4

The Facts Necessary to Understand the Issue Presented .......................4

      A.    GBB's allegations.................................................................4

      B.    GBB sold all its relevant assets and claims. ........................5

      C.    Petitioners raised the jurisdictional defect. ..........................6

      D.    The district court allowed GBB to "reclaim"
            standing.............................................................................9

Legal Standard.....................................................................................10

The Reasons Why the Writ Should Issue ..............................................11

I.    GBB lost standing when it transferred all its rights,
      claims, and causes of action to Jupiter Wellness in
      July 2023, requiring dismissal of this lawsuit. ...........................12

      A.    GBB lacked Article III standing. .........................................12

   B.  As a matter of prudential standing, the district court also should have dismissed the case. ................................... 15

II. The February 2026 amendment could not retroactively restore federal jurisdiction. .......................................... 17

   A.  Article III jurisdiction cannot be recreated by a contractual amendment. ..................................................... 17

   B.  The district court erred when it held that GBB "regained standing." ........................................................... 20

   C.  The district court misapplied the mootness doctrine. .......... 24

III. This Court should issue a writ of mandamus. .............................. 27

   A.  Portioners lack an alternative remedy to mandamus. .......... 28

   B.  Petitioners' right to dismissal is clear and indisputable. ................................................................ 30

   C.  The writ is appropriate in these circumstances. .................. 31

Conclusion ......................................................................................... 33

Certificate of Compliance ................................................................ 35

# Table of Authorities

**Page**

## Cases

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n,*
  731 F.2d 112 (2d Cir. 1984) ............................................................... 16

*Allen v. Wright,*
  468 U.S. 737 (1984) ................................................................. 15, 29

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997) ................................................................. 23, 24

*BancOhio Corp. v. Fox,*
  516 F.2d 29 (6th Cir. 1975) ...................................................... 10, 12, 27

*Bochese v. Town of Ponce Inlet,*
  405 F.3d 964 (11th Cir. 2005) ............................................................ 18

*Bonk v. FSD Pharma,*
  No. 26-cv-60412-MD (S.D. Fla.) ........................................................ 8, 19

*CAMP Legal Def. Fund, Inc. v. City of Atlanta,*
  451 F.3d 1257 (11th Cir. 2006) ....................................................... 15, 31

*Cohens v. State of Virginia,*
  19 U.S. 264 (1821) ...................................................................... 18

*De La Teja v. United States,*
  321 F.3d 1357 (11th Cir. 2003) ....................................................... 15, 31

*DiMaio v. Democratic Nat. Comm.,*
  520 F.3d 1299 (11th Cir. 2008) ........................................................ 17

*Elend v. Basham,*
  471 F.3d 1199 (11th Cir. 2006) ........................................................ 29

*Elk Grove Unified Sch. Dist. v. Newdow,*
  542 U.S. 1 (2004)...................................................................... 15, 16

*Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. EPA,*
  386 F.3d 1070 (11th Cir. 2004)............................................................12

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.,*
  647 F.3d 1296 (11th Cir. 2011).............................................. 15, 26, 31

*Flast v. Cohen,*
  392 U.S. 83 (1968)..............................................................................13

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.,*
  528 U.S. 167 (2000)................................................................ 14, 24, 25

*Gardner v. Mutz,*
  962 F.3d 1329 (11th Cir. 2020)...........................................................12

*Hollingsworth v. Perry,*
  570 U.S. 693 (2013)...................................................................... 13, 26

*In re K-Ram, Inc.,*
  451 B.R. 154 (Bankr. D. N.M. 2011)..................................................16

*In re Loudermilch,*
  158 F.3d 1143 (11th Cir. 1998).................................................... 10, 28

*In re Weaver,*
  632 F.2d 461 (5th Cir. 1980)..............................................................13

*Jackson v. Seaboard Coast Line R. Co.,*
  678 F.2d 992 (11th Cir. 1982)................................................ 17, 19, 26

*J W by & through Tammy Williams v. Birmingham Bd. of Educ.,*
  904 F.3d 1248 (11th Cir. 2018)...........................................................29

ix

*Kokkonen v. Guardian Life. Ins. Co. of Am.*,
    511 U.S. 375 (1994)................................................................................12

*La Buy v. Howes Leather Co.*,
    352 U.S. 249 (1957)..........................................................................10, 28

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..................................................................12, 14, 26

*MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*,
    974 F.3d 1305 (11th Cir. 2020)......................................................14, 15

*People's Bank v. Calhoun*,
    102 U.S. 256 (1880)................................................................................26

*Roche v. Evaporated Milk Ass'n*,
    319 U.S. 21 (1943)..........................................................................10, 27

*Rohe v. Wells Fargo Bank, N.A.*,
    988 F.3d 1256 (11th Cir. 2021)............................................................10

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005) .............................. 9, 19, 20, 21, 22, 31

*Secretary of State of Md. v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984)................................................................................16

*Sheely v. MRI Radiology Network, P.A.*,
    505 F.3d 1173 (11th Cir. 2007)............................................................25

*Southern Oregon Barter Fair v. Jackson County*,
    372 F.3d 1128 (9th Cir. 2004)..................................................10, 22, 23

*Special Invs., Inc. v. Aero Air, Inc.*,
    360 F.3d 989 (9th Cir. 2004)......................................................10, 28

x

*Tesseron, Ltd. v. Oce N.V.*,
  110 F. Supp. 3d 1255 (M.D. Fla. 2015)..............................................20

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980)........................................................................25

*United States v. Fernandez-Toledo*,
  737 F.2d 912 (11th Cir. 1984)..........................................................3

*United States v. Salmona*,
  810 F.3d 806 (11th Cir. 2016)..........................................................12

*Univ. of S. Alabama v. Am. Tobacco Co.*,
  168 F.3d 405 (11th Cir. 1999)..............................................18, 25, 28

*Valley Forge Christian Coll. v. Americans United for
  Separation of Church & State, Inc.*,
  454 U.S. 464 (1982)........................................................................13

*Virginia House of Delegates v. Bethune-Hill*,
  587 U.S. 658 (2019)........................................................................25

*Wernick v. Mathews*,
  524 F.2d 543 (5th Cir. 1975)...........................................................18

**Statute**

28 U.S.C. § 1651 ..............................................................................3

**Rule**

Fed. R. Civ. P 25..............................................................................19

**Other Authority**

13A Fed. Prac. & Proc. Juris.
  § 3531 (3d ed.) (Wright & Miller).....................................................13

**Introduction**

FSD Biosciences and FSD Pharma respectfully petition this Court for a writ of mandamus directing the district court to dismiss GBB's lawsuit for lack of subject matter jurisdiction. GBB lost standing. Under this Court's well-settled precedent, if at any point in the litigation a plaintiff ceases to meet the requirements for constitutional standing, the suit no longer presents a live case or controversy, and the district court *must dismiss* for lack of subject matter jurisdiction. That did not occur here.

This petition presents a clean and important jurisdictional question as to whether a party can "reclaim" or "regain" standing after it was lost. GBB filed suit and then sold all its relevant assets—including all rights, legal claims, and causes of action—to a non-party (Jupiter Wellness). A235. GBB continued litigating those claims for almost three years. After Petitioners identified the jurisdictional defect, the district court allowed GBB to reestablish standing instead of dismissing the case.

Petitioners recognize that mandamus is an extraordinary remedy, but the district court issued an extraordinary jurisdictional ruling. The district court first held that the relevant asset purchase agreement was unambiguous and that GBB expressly transferred its claims to non-party Jupiter Wellness. Then, the district court correctly held that GBB lacked standing after the transfer, and that its claims were moot. But the district court nevertheless refused to dismiss GBB's suit.

1

The district court concluded that GBB could *restore* federal jurisdiction (i.e., GBB could regain standing) by signing an "amendment" to the July 2023 asset purchase agreement in the midst of briefing directly challenging its standing. The amendment was signed in February 2026, after Petitioners argued for dismissal. That erroneous ruling now permits private parties to manufacture federal jurisdiction after it has been lost, simply by signing a new document, and it nullifies Article III's command that federal courts decide only live cases and controversies between parties with a concrete and continuing stake.

The district court's ruling cannot be reconciled with binding precedent. Federal jurisdiction cannot be reestablished using a post hoc contractual on-off switch. The Constitution does not permit a plaintiff to stipulate its way back into a case after the plaintiff has assigned away the very legal rights that it asks the district court to enforce. Nor does the Constitution allow a district court to retain a case while waiting for the parties to rearrange ownership interests in an effort to preserve a preferred litigation vehicle.

After GBB unambiguously transferred its claims to non-party Jupiter Wellness, GBB ceased to be the party injured by Petitioners' alleged conduct; GBB ceased to have any legally protected interest in the claims; and GBB ceased to have a redressable injury. The only party with any continuing stake after July 2023 was Jupiter Wellness (now Bonk, Inc.)—a non-party that since has filed its own separate lawsuit against

2

Petitioners alleging the same causes of action as GBB. Because of the district court's erroneous ruling, Petitioners simultaneously must defend two lawsuits with two different parties alleging the same claims.

The district court's ruling was not a mere case-management decision or a run-of-the-mill summary judgment order. It was a threshold jurisdictional error that now subjects Petitioners to a trial in which the district court lacks the constitutional authority to proceed. Mandamus is warranted because Petitioners have no adequate means to avoid the unauthorized exercise of judicial power. The right to dismissal is clear and indisputable even on the district court's own findings. This Court should issue a writ to preserve the separation-of-powers limits embedded in Article III.

### Jurisdictional Statement

The All Writs Act states that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act essentially provides a "discretionary remedy" for petitioners in extraordinary situations. *United States v. Fernandez-Toledo*, 737 F.2d 912, 919 (11th Cir. 1984).

### Relief Sought

Petitioners seek a writ from this Court directing the district court to dismiss GBB's lawsuit for lack of standing. Petitioners request expedited proceedings because trial is set to commence on July 22, 2026.

3

## Issues Presented

(1) Whether a plaintiff that sells and assigns all of its rights, claims, and causes of action asserted in a pending lawsuit to a non-party loses the continuing personal stake required by Article III.

(2) Whether a federal district court may permit the original plaintiff to continue litigating its claims after it loses subject matter jurisdiction based on a post-briefing, post-challenge amendment between the assignor and assignee purporting to reallocate ownership of the claims nearly three years after the original assignment.

(3) Whether mandamus is warranted after the district court itself found that the assignment was unambiguous, that the plaintiff lacked standing, and that its claims were moot, but nevertheless refused to dismiss the lawsuit.

### The Facts Necessary to Understand the Issue Presented

### A.    GBB's allegations

In its amended complaint, GBB alleged that Petitioners (FSD Biosciences and FSD Pharma) "violated non-disclosure agreements and misappropriated trade secrets regarding the specialized beverage product formulated by GBB."  A234; *see also* A57–76.

Petitioners never disputed that GBB had standing when it first filed suit.  *See, e.g.*, A146, A240.  GBB alleged at the outset of this litigation that it owned the relevant intellectual property, confidential information, and trade-secret rights, and GBB contended that it was

4

injured by Petitioners' alleged conduct.  *See* A40–41 (¶¶ 4–9); A50 (¶ 43). The jurisdictional problem arose later.

### B.     GBB sold all its relevant assets and claims.

In July 2023, one month after it amended its complaint, "GBB sold all of its assets to Jupiter Wellness, Inc."  A235.  In that transaction, Jupiter Wellness acquired "from GBB 'all rights, claims and causes of action against third parties arising either *before* or *after* the Closing Date.'"  *Id.* (quoting Section 2.1(a) of the asset purchase agreement) (emphasis added).  The purchased assets included all "claims and causes of action with respect to [the disputed] Intellectual Property, whether accruing before, on, or after the date hereof, including all rights to damages, restitution, and injunctive and other legal or equitable relief for *past*, *present* and *future* infringement, misappropriation, or other violation thereof."  *Id.* (quoting Schedule 1 of the asset purchase agreement) (emphasis added).

By its plain terms, the asset purchase agreement transferred to Jupiter Wellness all the rights and claims that GBB has asserted in this case.  After the transaction closed, GBB no longer owned the claims on which it sought relief.  And GBB no longer had any right to damages arising from the alleged misappropriation.  Nor did GBB have any right to injunctive or equitable relief concerning the alleged intellectual property violations.  GBB no longer had any personal stake in the outcome of the lawsuit.

Jupiter Wellness, however, did not become a party in this suit.  GBB did not substitute Jupiter Wellness, and GBB did not join Jupiter Wellness.   Nor did GBB timely disclose the full jurisdictional consequence of the asset sale.  GBB instead continued litigating for years in its own name, asserting claims that the asset purchase agreement had assigned to a non-party (Jupiter Wellness).  Petitioners first learned of the sale late in discovery, and they then argued for dismissal as the district court lacked subject matter jurisdiction to proceed.

### C.    Petitioners raised the jurisdictional defect.

In their motion for summary judgment, Petitioners argued that GBB lacked standing to assert its claims "because GBB sold its assets, including this lawsuit, to Jupiter Wellness, that GBB has not suffered any cognizable damages, and that there is no evidence that [Petitioners] misappropriated or used any of GBB's confidential or proprietary information." A236.

After a December 2025 hearing, the district court issued an order advising the parties that "the plain language" of the asset purchase agreement indicated that GBB "currently lack[ed] standing to proceed with the claims asserted in the Amended Complaint" because the asset purchase agreement indicated that GBB sold its assets, "including the claims asserted in the lawsuit, to Jupiter Wellness." A236–37.

The district court ordered supplemental briefing on two questions: "(1) whether GBB can and has re-established standing despite its sale of

assets, including the claims in this lawsuit, to a non-party; and (2) whether GBB can reclaim standing, as it had when the case was filed, after having lost it during the litigation pursuant to the APA." A237.

GBB responded by insisting that it never actually "lost standing." A128. According to GBB, the parties to the asset purchase agreement subjectively intended all along to carve out the pending lawsuit. *See id.* GBB relied on declarations to support its claim. A130; *see also* A134–35 (declaration from GBB's CEO); A138–40 (declaration from Jupiter's legal counsel). GBB also attached to its supplemental brief an unexecuted proposed amendment to the asset purchase agreement. A142–43.

In opposition, Petitioners argued that Article III standing must exist throughout all phases of litigation, that the unambiguous terms of the asset purchase agreement transferred all relevant claims to Jupiter Wellness, that subjective declarations could not rewrite the plain terms of the asset purchase agreement, and that an unexecuted proposed amendment could not cure the jurisdictional defect. *See* A145–52.

Though the district court did not permit GBB to file a reply brief, GBB did so anyway. *See* A156–65. As an attachment, GBB filed a new signed version of the "amendment" that Petitioners previously challenged. A201–04. GBB and Jupiter completed signing the amendment on February 12, 2026, A204, nearly one week *after* Petitioners had filed their supplemental brief in opposition, A153.

7

The amendment purported to exclude from the July 2023 asset sale GBB's claims against Petitioners up to the effective date of the original asset purchase agreement.  Specifically, GBB purported to exclude all "rights, claims, and causes of action against third parties related to the allegations and causes of action raised in the matter GBB Drink Lab, Inc. vs. FSD Pharma, Inc. and FSD Biosciences, Inc., filed in the Southern District of Florida, Case No. 23-cv-60800"—i.e., this lawsuit—"including, but not limited to, sellers' causes of action for breach of contract and trade secret misappropriation, up to and until the effective date of the Asset Purchase Agreement." A201.

In its reply brief, GBB stated that Jupiter Wellness's successor, Bonk, Inc., intended to file a separate lawsuit against Petitioners seeking relief for the same claims. A164.  On February 13, 2026—the same day that GBB filed its unauthorized reply brief attaching the newly signed amendment to the July 2023 asset purchase agreement—Bonk filed its complaint.  *See Bonk v. FSD Pharma*, No. 26-cv-60412-MD (S.D. Fla.) (Dkt. No. 1).

Petitioners moved to dismiss Bonk's complaint and argued that Bonk cannot have it both ways, insisting that GBB regained the right to assert its claims against Petitioners while also simultaneously asserting the same claims against Petitioners.  That motion has been pending since April 7, 2026, and the district court has not yet ruled on it.  Recently, the

8

district court ordered the parties to file a joint scheduling report in the *Bonk* litigation. *Id.* (Dkt. No. 23).

**D.    The district court allowed GBB to "reclaim" standing.**

The district court denied Petitioners' motion for summary judgment. *See* A233–44.

As to the July 2023 asset purchase agreement, the district court found that its relevant terms were "unambiguous." A240. The district court found "GBB's attempts to modify the plain language of the Jupiter APA by way of declarations unavailing." *Id.* The asset purchase agreement expressly transferred "GBB's legal rights and claims to Jupiter Wellness." *Id.*

Because GBB had transferred to Jupiter Wellness (now Bonk) all rights to pursue the causes of action alleged in this lawsuit, "as a matter of law," the district court held that "GBB no longer had standing." A241. "Put differently," the district court concluded that "GBB's claims were moot" by the time the parties filed summary judgment briefing in July 2025. A242.

The district court then proceeded to hold that GBB "regained standing" through the February 2026 executed amendment and that its claims were no longer moot. A243. The district court reasoned that a two-and-a-half-year-long loss of standing can be cured if the rights at issue are reacquired before judgment, relying principally on *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005), and

9

*Southern Oregon Barter Fair v. Jackson County*, 372 F.3d 1128 (9th Cir. 2004). *See id.* Based on the amendment executed in February 2026, the district court concluded that GBB again owned the causes of action (after a substantial gap in ownership) and that GBB's controversy somehow sprang back to life.

## Legal Standard

Though mandamus is an "extraordinary remedy," the issuance of a writ may be appropriate "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943); *accord Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (same); *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1265 (11th Cir. 2021) (same).

A writ may issue for this Court to exercise "supervisory control" of a district court to ensure "proper judicial administration in the federal system." *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259–60 (1957). "Lack of jurisdiction is one such exceptional circumstance and is a recognized basis for granting the writ." *In re Loudermilch*, 158 F.3d 1143, 1145 (11th Cir. 1998) (citing *Kerr v. United States Dist. Court*, 426 U.S. 394, 402 (1976)); *see also Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 993–95 (9th Cir. 2004) (granting the writ and ordering the district court to vacate an order for lack of subject matter jurisdiction); *BancOhio Corp. v. Fox*, 516 F.2d 29, 33 (6th Cir. 1975) (granting the writ and

10

ordering the district court "to dismiss the action without prejudice" for lack of jurisdiction).

Three conditions must be satisfied before a writ may issue. These conditions are meant to be "demanding"—yet they "are not insuperable." *Cheney*, 542 U.S. at 381. First, the writ cannot "be used as a substitute for the regular appeals process." *Id.* at 380–81. Courts may issue a writ only if the party seeking issuance has no other adequate remedy to obtain the relief it seeks. Second, the petitioner must demonstrate that the "right to issuance of the writ is clear and indisputable." *Id.* at 381 (quoting *Kerr*, 426 U.S. at 403). Third, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

### The Reasons Why the Writ Should Issue

Mandamus is an extraordinary remedy, but the district court issued an extraordinary jurisdictional ruling. The district court held that GBB unambiguously sold all of its legal claims; that GBB lacked standing; that the claims were moot; and yet the district court still retained jurisdiction based on a later amendment designed solely to cure the jurisdictional defect after Petitioners exposed it. That ruling is clear legal error because it permits GBB to create federal jurisdiction by contract, and it forces Petitioners to stand trial in a case that falls outside of Article III.

11

A writ should issue. Petitioners have no other adequate means to obtain relief, their right to the writ is clear and indisputable, and issuance is appropriate under the circumstances.

## I. GBB lost standing when it transferred all its rights, claims, and causes of action to Jupiter Wellness in July 2023, requiring dismissal of this lawsuit.

The jurisdictional question presented here is not "difficult." *BancOhio*, 516 F.2d at 33. Federal courts have limited jurisdiction: they "possess only that power authorized by Constitution and statute." *United States v. Salmona*, 810 F.3d 806, 810 (11th Cir. 2016) (quoting *Kokkonen v. Guardian Life. Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Jurisdiction cannot be "expanded by judicial decree." *Kokkonen*, 511 U.S. at 377. Federal courts must presume "that a cause lies outside this limited jurisdiction," and a plaintiff bears "the burden of establishing the contrary." *Id.* GBB failed to carry its burden throughout this litigation.

### A. GBB lacked Article III standing.

Standing is "perhaps the most important" perquisite for Article III jurisdiction. *Gardner v. Mutz*, 962 F.3d 1329, 1337 (11th Cir. 2020) (quoting *Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. EPA*, 386 F.3d 1070, 1083 (11th Cir. 2004)). Indeed, standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum of standing" requires a plaintiff to demonstrate injury-in-fact, causation, and redressability. *Id.*

12

"Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, but Article III demands" that a plaintiff must maintain standing "throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013); *accord West Virginia v. EPA*, 597 U.S. 697, 718 (2022).

"The requirement of standing 'focuses on the party seeking to get [its] complaint before a federal court and not on the issues [it] wishes to have adjudicated.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982) (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968)); *accord* 13A Fed. Prac. & Proc. Juris. § 3531 (3d ed.) (Wright & Miller).  In this case, GBB lost standing when it transferred its claims and legal rights to Jupiter Wellness while the litigation was pending.  *See* A241.

The district court should have dismissed the complaint without prejudice because GBB no longer had a continuing interest in this litigation after it sold all of its assets to Jupiter Wellness (including the claims that it raised in this lawsuit).  The "lack of standing" deprived the district court "of subject matter jurisdiction." *In re Weaver*, 632 F.2d 461, 463 n.6 (5th Cir. 1980).

Once GBB ceased to own the claims, no live controversy remained between GBB and Petitioners.  A plaintiff cannot litigate injuries that belong to another entity, and a federal court cannot adjudicate claims for the benefit of a non-party.  Article III standing requires injury in fact,

13

causation, and redressability. *See Lujan*, 504 U.S. at 560–61. The injury must be concrete, particularized, and actual or imminent. *Id.* at 560. Redressability further requires that a favorable decision likely will redress the plaintiff's injury.

But, when a plaintiff has assigned away its claims and legal rights, those elements are absent. The assignor no longer has the injury; the assignor no longer has the right to relief; and the assignor no longer can be redressed by a judgment on the claims that it has assigned to another entity. Courts have no license "to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest." *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000).

GBB as a party in this case had "no injury in fact and thus no Article III standing" after it transferred its assets and claims to Jupiter Wellness. *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1316 (11th Cir. 2020) (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008)). Indeed, *MSP* illustrates the district court's error here. After GBB assigned its claims and rights to Jupiter Wellness, GBB was left with "nothing." *Id.* The asset purchase agreement functioned as a complete assignment—GBB sold, and Jupiter Wellness acquired, all claims and legal rights arising *before* or *after* the asset purchase agreement was signed. A235. The actual language of the

14

assignment was "dispositive" because it left GBB with no rights to enforce. *MSP*, 974 F.3d at 1319.

The district court correctly held that the asset purchase agreement was "unambiguous" as to the transfer of rights and claims. A241. That holding should have ended its inquiry because, "as a matter of law, GBB no longer had standing to pursue the claims." *Id.* The district court, however, failed to follow this Court's binding precedent requiring dismissal.

"If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court *must dismiss* the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006), and *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003)) (emphasis added).

**B.   As a matter of prudential standing, the district court also should have dismissed the case.**

Though the Supreme Court has "not exhaustively defined the prudential dimensions of the standing doctrine," the elements of prudential standing reflect several judicially self-imposed limits on the exercise of federal jurisdiction, including "the general prohibition on a litigant's raising another person's legal rights." *Elk Grove Unified Sch.*

15

*Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *accord Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). A plaintiff must assert its "own legal rights and interests"—it cannot rest its "claim to relief on the legal rights or interests of third parties." *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984) (quoting *Warth v. Seldin*, 422 U. S. 490, 501 (1975)).

Based on the unambiguous terms of the asset purchase agreement, GBB transferred its rights and claims to a non-party, Jupiter Wellness (now Bonk). The district court failed to recognize that, as a prudential matter, GBB could not continue this litigation by relying on claims to relief that belonged solely to Jupiter Wellness.

GBB's "unequivocal and complete assignment" of its claims to Jupiter Wellness/Bonk extinguished GBB's legal rights in this case, leaving GBB "without standing" to continue its suit against Petitioners. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984); *accord Matter of Motors Liquidation Co.*, 689 Fed. App'x 95, 96 (2d Cir. 2017). When a party "makes an absolute assignment of a cause of action," as GBB did here, that party "loses standing to pursue, continue, or settle" any of those claims. *In re K-Ram, Inc.*, 451 B.R. 154, 168 (Bankr. D. N.M. 2011) (citing Wright & Miller § 1545).

16

## II.   The February 2026 amendment could not retroactively restore federal jurisdiction.

The district court avoided dismissal by holding that GBB "regained standing" through the February 2026 amendment and that its claims were no longer moot.  A243.  That ruling directly conflicts with binding precedent.

### A.   Article III jurisdiction cannot be recreated by a contractual amendment.

Federal jurisdiction is determined by the Constitution and by statutes, not by a party's later preferences and certainly not by the stroke of a party's electronic pen.  Plaintiffs may settle claims, assign claims, or amend contracts.  But they cannot use private agreements to compel a federal court to adjudicate a dispute that ceased to be a live Article III controversy.

Jurisdiction "cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982).  "Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Id.* (quoting *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 18 (1950)).  When a party lacks standing, the court has no jurisdiction to proceed and the case must be dismissed without prejudice. *See, e.g.*, *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1300 (11th Cir. 2008).

17

As explained above, when GBB assigned the claims to Jupiter Wellness (now Bonk) in July 2023, GBB's personal stake in this litigation vanished. From that point forward, the case no longer presented a live controversy between GBB and Petitioners. The district court had no authority to proceed because courts "are powerless to hear a case" when a plaintiff lacks standing. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). "Simply put," when a court lacks subject matter jurisdiction, "the court is powerless to continue." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see also Wernick v. Mathews*, 524 F.2d 543, 545 (5th Cir. 1975) (holding that, without jurisdiction, a court is "powerless to consider the merits").

Without subject matter jurisdiction, "the court cannot proceed at all in any cause." *Univ. of S. Alabama*, 168 F.3d at 410 (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *McCardle*, 74 U.S. at 514. Courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821); *accord New Georgia Project, Inc. v. Att'y Gen., State of Georgia*, 106 F.4th 1237, 1241 (11th Cir. 2024) (same).

A later amendment to the asset purchase agreement cannot change the fact that, for years, GBB had no stake in this case. Nor could the

18

later amendment convert the district court's prior lack of jurisdiction into reestablished jurisdiction. *See Jackson*, 678 F.2d at 1000. That is the central flaw in the order below. The district court essentially treated standing as an inconvenient defect subject to later repair. That is, however, not how the law works. The district court failed to recognize that standing and mootness are *constitutional* limits; they are neither pleading defects nor litigation inconveniences. Standing is required for subject matter jurisdiction; it is a prerequisite to the exercise of judicial power. Without it, no court can proceed.

It may be that the February 2026 amendment could have contractual consequences between GBB and Jupiter/Bonk. But the amendment cannot erase the constitutional consequences of the unambiguous July 2023 assignment of GBB's claims and causes of action. For almost three years, GBB proceeded to litigate this case even though it no longer owned the claims. The district court should have announced that fact and dismissed the case. *See McCardle*, 74 U.S. at 514.[1]

---

[1] After the July 2023 transfer, Jupiter Wellness could have been substituted as a plaintiff. *See* Fed. R. Civ. P 25(c). But that did not happen. Instead, the district court impermissibly allowed GBB to proceed on its own. And now Jupiter (i.e., Bonk) has its own separate lawsuit against Petitioners alleging the same claims that GBB has asserted here. *See* Complaint, *Bonk v. FSD Pharma*, No. 26-cv-60412-MD (S.D. Fla.) (Dkt. No. 1)

**B.   The district court erred when it held that GBB "regained standing."**

The district court incorrectly held that "standing can be cured" in this case, relying principally on *Schreiber Foods* and *Southern Oregon Barter Fair*.  A243.  Neither case controls here.  In fact, neither case involved circumstances present in this litigation:  an unambiguous sale of all claims to a non-party while the case was pending, years of subsequent litigation by the assignor, no substitution or joinder of the real owner, a later amendment executed only after the jurisdictional defect was raised, and a separate lawsuit filed by the assignee's successor (Jupiter Wellness/Bonk) against the same defendants.

*Schreiber* is a patent case from the Federal Circuit.  "Issues of standing and mootness in the context of patent suits can be particularly complex due to the frequent sales of IP, and the standing requirements to bring a patent infringement suit."  *Tesseron, Ltd. v. Oce N.V.*, 110 F. Supp. 3d 1255, 1259 (M.D. Fla. 2015).  Patent litigation is unique.

The plaintiff in *Schreiber* owned the patent when it filed suit, later assigned the patent to a subsidiary, and then reacquired it before judgment.  *See Schreiber*, 402 F.2d at 1203–04.  "In the area of patent infringement," the Federal Circuit explained that it previously has "held that if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing."  *Id.* at 1203 (citing *Paradise Creations,*

20

*Inc. v. U V Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003)).  The Federal Circuit also recognized that "the subsequent purchase of an interest in the patent in suit" cannot cure a standing defect that existed at the time a suit initially was filed.  *Id.* (citing *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996)).

Even so, the Federal Circuit "has also held that the temporary loss of standing during patent litigation can be cured before judgment."  *Id.* at 1204.  Because Schrieber reacquired the relevant patent "before the entry of judgment," the Federal Circuit concluded that the "jurisdictional defect"—caused after Schreiber assigned all causes of action to its subsidiary—could be "cured" in the unique context of patent litigation.  *Id.*

Whatever the correctness of that patent-specific decision, it should not be extended to this case.  Patent litigation might have generated distinct case law concerning legal title, exclusionary rights, and the relationship between patent owners and licensees.  But those context-specific cases should be confined to their unique circumstances.  "The general rule in federal cases," which the Federal Circuit correctly identified, "is that a plaintiff must have initial standing and 'continue to have a personal stake in the outcome of the lawsuit.'"  *Id.* at 1203 (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).  This is not a patent case, and that general rule applies.  The district court entirely missed that.

21

More importantly, though, *Schreiber* did not involve an assignee that remained a non-party while separately pursuing its own lawsuit. Here, there are two pending lawsuits involving the same claims: (1) this lawsuit; and (2) Bonk's lawsuit. The district court has allowed *both* to proceed simultaneously. *Schrieber* did not address whether parties may salvage jurisdiction by executing a corrective amendment after a defendant has identified a standing problem. Nor did *Schreiber* address whether a district court could reclaim jurisdiction in the circumstances presented here, allowing both the assignor and the assignee to maintain two parallel suits. Either way, *Schreiber* is not binding in this Circuit.

*Southern Oregon Barter Fair* is even further afield. There, the Ninth Circuit addressed a nonprofit corporation's temporary suspension and reinstatement of its corporate status. *S. Oregon Barter Fair*, 372 F.3d at 1134. The relevant entity (referred to as "the Fair") "failed to pay an administrative fee," and the State of Oregon "rescinded the Fair's corporate status." *Id.* Yet "the Fair successfully requested reinstatement." *Id.* In its lawsuit, the Fair challenged the Oregon Mass Gathering Act, arguing that "the Act is facially unconstitutional under the First Amendment." *Id.* at 1131.

The State of Oregon "intervened and moved for summary judgment on the claims challenging the facial constitutionality of the Act." Id. at 1133. Among other things, the State of Oregon argued that the Fair's challenge was moot because the Fair had "not applied for a mass

22

gathering permit, or engaged in any other preparations for a mass gathering." *Id.* The Ninth Circuit rejected those arguments.

The Ninth Circuit held that the "proceeding would be moot if the Fair had entirely ceased to operate, left the business, and no longer sought or intended to seek a license." *Id.* at 1134. But the State of Oregon had not argued that the Fair "ceased to exist as a corporate entity, or that it no longer [sought] to hold another gathering." *Id.* So, the Ninth Circuit held that the Fair could "bring a facial challenge to the Act." *Id.* That holding has no bearing here. It is inapposite to this case.

A temporary lapse in the corporate status of a nonprofit fair caused by an administrative failure to pay fees is not comparable to GBB's voluntary sale of all its claims and rights to a separate non-party entity. Reinstating the fair's corporate status did not alter the ownership of the fair's claims or somehow substitute a different injured party. Here, by contrast, GBB deliberately transferred its causes of actions and legal rights to Jupiter Wellness after it filed its amended complaint. That transfer unambiguously changed which entity owned the "legal rights and claims" asserted in this case. A240. The district court erred when it relied on *Southern Oregon Barter Fair* to conclude that GBB could regain standing based on the amendment executed by the parties in February 2026. A243. The district court should have dismissed the case for lack of subject matter jurisdiction.

23

Petitioners properly argued that *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) serves as an instructive case. A152. There, an individual state-government employee challenged a state constitutional provision that declared English the official language in Arizona. *See Arizonans*, 520 U.S. at 67.

At some point in the litigation, the employee left government service and "it became plain that she lacked a still vital claim for prospective relief." *Id.* The case could not be saved by creative theories of continued adversity. After circumstances changed such that the plaintiff no longer had a personal stake in the litigation, the plaintiff lacked standing and the case was moot. *See id.* at 71–72. The same is true here. "GBB's claims were moot" after it transferred its rights to Jupiter Wellness. A242. GBB had no continuing stake in seeking relief against Petitioners.

## C. The district court misapplied the mootness doctrine.

The district court incorrectly held that GBB "regained a direct stake in the outcome" of this litigation after it signed the February 2026 amendment to the asset purchase agreement. A243.

"Standing doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a *concrete stake*." *Laidlaw*, 528 U.S. at 191 (emphasis added). And, as this Court has emphasized, "standing and mootness are in fact distinct doctrines which must not be confused."

24

*Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 n.16 (11th Cir. 2007).

In the context of mootness, the issue frequently arises after years of litigation, and a party may try to argue that "sunk costs" could justify continued litigation. *Laidlaw*, 528 U.S. at 192. But that argument cannot recreate a direct stake in the litigation for standing purposes. Any argument based on "sunk costs does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest." *Id.*

After the district court held, "as a matter of law," that "GBB no longer had standing to pursue the claims in this suit," A241, the district court was "powerless to continue," *Univ. of S. Alabama*, 168 F.3d at 410. GBB lacked a "continuing interest" in the litigation. *Laidlaw*, 528 U.S. at 192. However "flexible" the mootness doctrine may be in some instances, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980), it cannot be stretched beyond Article III. The district court had no authority to allow GBB to reclaim a direct interest in this case such that its controversy sprang back to life. *See* A243.

Standing is a "jurisdictional requirement" that cannot be "waived or forfeited." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). "The jurisdiction of a court over the subject matter of a claim involves the court's *competency* to consider a given type of case." *Jackson*, 678 F.2d at 1000 (emphasis added). In the same way "that the mere

25

consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case," *People's Bank v. Calhoun*, 102 U.S. 256, 260–61 (1880), GBB and Jupiter Wellness cannot reestablish jurisdiction by adding their electronic signatures to a document filed in the district court after Petitioners properly challenged GBB's standing.

The order below undermines these principles and turns well-established legal doctrines on their head.  The district court permitted GBB and a non-party (Jupiter) to stipulate by agreement, entered after GBB lost standing, that GBB may continue this litigation as the proper plaintiff.  Article III does not ask whether GBB (or even Bonk) actually prefers for GBB to litigate its claims in this case while maintaining a back-up lawsuit (brought by Bonk) with the same claims.  Article III instead focuses on whether GBB has maintained "a legally protected interest" that is "concrete and particularized," *Lujan*, 504 U.S. at 560, "throughout all stages of litigation," *Hollingsworth*, 570 U.S. at 705.

GBB has not done so.  The district court itself held, as a matter of law, that GBB lost standing after it "transferred its rights to pursue the causes of action in the instant suit to Jupiter Wellness by way of the Jupiter APA."  A241.  Yet the district court declined to impose the constitutionally required consequence:  dismissal "for lack of subject matter jurisdiction."  *Fla. Wildlife Fed'n, Inc.*, 647 F.3d at 1302.  This Court should not allow that ruling to stand.

26

The district court's approach creates serious practical problems. If an assignor (i.e., GBB) can continue to litigate its case after transferring away its claims, curing the problem with a post hoc amendment, defendants will be forced to defend not only against the original plaintiff but also against the new assignee in parallel litigation. That is exactly what has happened here; the district court has kept *both cases* alive.

Petitioners now face a trial against GBB, with Bonk's lawsuit still looming. In this situation, it is entirely unclear who might be bound by whatever rulings may come, who may settle, who may release claims, and who ultimately may recover damages. Bonk's separate lawsuit *mirrors* GBB's suit. So, Petitioners now face the risk of overlapping litigation by both the assignor and the assignee, even though the original asset purchase agreement transferred all past, present, and future claims to the assignee (Jupiter Wellness).

Article III prevents that confusion by insisting on a plaintiff with a personal stake. The legal rule is clear, administrable, and constitutionally required. GBB lost its stake in this litigation when it unambiguously transferred all of its claims to Jupiter Wellness. The district court should have dismissed the lawsuit after the loss occurred.

## III. This Court should issue a writ of mandamus.

A writ should issue to confine the district court to the "lawful exercise of its prescribed jurisdiction." *Roche*, 319 U.S. at 26. This Court should exercise its " supervisory control" of the district court to ensure

27

"proper judicial administration in the federal system." *La Buy*, 352 U.S. at 259–60.  Lack of jurisdiction "is a recognized basis for granting the writ." *In re Loudermilch*, 158 F.3d at 1145; *see also Special Invs., Inc.*, 360 F.3d at 993; *BancOhio Corp.*, 516 F.2d at 33.

### A.   Portioners lack an alternative remedy to mandamus.

Mandamus is warranted because Petitioners lack an adequate alternative remedy.  The district court's ruling sends this case to trial, even though the district court lacks subject matter jurisdiction.  Ordinary appellate review after final judgment is not adequate to protect Petitioners from the injury they will suffer:  Petitioners are now forced to litigate and to try a case in a federal court that lacks Article III jurisdiction.

To be sure, most erroneous denials of summary judgment can be reviewed after final judgment.  But this petition does not challenge an ordinary merits ruling.  It challenges the district court's constitutional *authority* to proceed at all.  The harm is not merely the possibility of an adverse judgment; it is the unauthorized exercise of judicial power. Absent subject matter jurisdiction, the district court is "powerless to continue." *Univ. of S. Alabama*, 168 F.3d at 410.

If Petitioners are forced to go to trial, the jurisdictional injury cannot be fully undone.  The burdens of trial, the disclosure of sensitive information, the risk of inconsistent adjudications with Bonk's separate

28

action, and the expenditure of judicial resources already will have occurred by the time Petitioners ultimately could seek appellate review.

The absence of an adequate remedy is especially strong in this case because the district court's own order resolves the relevant facts and law necessary to decide the jurisdictional issue. The district court found the asset purchase agreement was unambiguous. It found that GBB transferred all relevant claims, and the district court held that GBB lacked standing and that the case was moot. The only legal question is whether the later amendment somehow could revive federal jurisdiction. That issue is appropriate for this Court's immediate supervisory review.

Waiting for final judgment defeats the structural function of Article III. Subject matter jurisdiction is a threshold limitation, and standing is a constitutional "prerequisite" for a court to proceed. *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018). Subject matter jurisdiction is not merely a defense to liability. Article III's "jurisdictional limitation 'defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.'" *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) (quoting *Allen*, 468 U.S. at 750).

If a federal court lacks jurisdiction, the parties should not be compelled to proceed through trial to obtain an outcome that the court has no power to provide.

29

**B. Petitioners' right to dismissal is clear and indisputable.**

The right to relief in this case is clear and indisputable because the district court's own findings confirm the jurisdictional defect.

First, the district court held that the asset purchase agreement unambiguously transferred GBB's claims to Jupiter Wellness. A240–42. That ruling eliminates any factual dispute about ownership under the original agreement. Only Jupiter Wellness (now Bonk) has ownership of the claims.

Second, the district court rejected GBB's effort to rely on declarations to alter the plain terms of the unambiguous agreement. *See* A241. That eliminates GBB's principal argument that the claims were never transferred. They were.

Third, the district court held that GBB no longer had standing to pursue the claims after Petitioners moved for summary judgment and that the claims were moot. *See* A241–42. That establishes the constitutional defect. At that point, the district court was powerless to act. The "only function remaining" was for the district court to announce that it lacked subject matter jurisdiction and to dismiss the case. *McCardle*, 74 U.S. at 514.

Fourth, the only basis for retaining the case was the February 2026 amendment. But, as a matter of law, a party cannot retroactively create Article III jurisdiction after a plaintiff has lost all legal interest in the

30

litigation. At minimum, once the case became moot, the district court lacked authority to proceed further except to dismiss. *See Fla. Wildlife Fed'n, Inc*, 647 F.3d at 1302; *CAMP Legal Def. Fund, Inc.*, 451 F.3d at 1277; *De La Teja*, 321 F.3d at 1362.

The district court's reliance on nonbinding cases addressing temporary defects in patent litigation cannot diminish Petitioners' well-established right to dismissal in this case. Patent litigation may be unique but it cannot displace the "general rule in federal cases"—"a plaintiff must have initial standing and 'continue to have a personal stake in the outcome of the lawsuit'" throughout all stages of the litigation. *Schreiber*, 402 F.3d at 1203 (quoting *Spencer*, 523 U.S. at 7). In any event, neither GBB nor the district cited any authority authorizing the revival of a moot case through a corrective contractual amendment executed after the jurisdictional defect was raised by the defendants.

This case is therefore not one in which mandamus would require the Court to resolve uncertain factual disputes or to supervise discretionary case management. The district court already decided all of the facts. The constitutional consequence follows: dismissal is required.

### C. The writ is appropriate in these circumstances.

This Court's intervention is appropriate. As an initial matter, the jurisdictional issue is important not only to the litigants in this case but to all future litigants who may attempt to rely on the district court's

31

erroneous ruling to regain standing or to undo mootness. This Court has never condoned such an approach.

The order below permits a plaintiff to continue litigating federal claims after selling those claims to a non-party, so long as the plaintiff later obtains a contractual amendment before judgment. That ruling threatens Article III limitation on the separation of powers, and it invites manipulation of federal jurisdiction. The district court's ruling cannot stand.

Following the district court's decision, similar jurisdictional issues likely will recur. Asset sales, claim assignments, mergers, and litigation transfers are common. If district courts may retain cases after a complete transfer of claims to non-parties, defendants and courts will face uncertainty about whether the named plaintiff, the assignee, or both may pursue relief. Clear guidance is needed now from this Court.

Most importantly, though, the posture of this litigation is unusually suitable for mandamus. The district court expressly found the original asset purchase agreement unambiguous and found that GBB lost standing. The petition therefore presents a pure legal question: whether a later contractual amendment can revive federal jurisdiction. There is no need for factual development, no need to weigh evidence, and no intrusion into any merits issues.

Issuing the writ will promote judicial economy. If the district court lacks jurisdiction, further proceedings—including trial—unnecessarily

32

will waste the resources of the parties, the district court, jurors, and ultimately this Court. Bonk's separate lawsuit potentially may provide the proper vehicle, if any, for the claims to be litigated. Yet no federal court should maintain two overlapping actions, one by the entity that originally brought the claims and one by the entity that purchased them.

Dismissal with prejudice is the proper outcome. Petitioners are not asking this Court to adjudicate the merits of GBB's trade-secret or contract allegations. They ask only that Article III be enforced. If Bonk now owns all relevant claims, Bonk may pursue them in its separate action subject to any defenses that Petitioners may raise. If GBB believes that it still owns some claims by virtue of the February 2026 amendment, it may attempt to file a new action and to establish jurisdiction as of that filing date, subject to any defenses.

What GBB may not do is continue this action as though the July 2023 transfer never happened. The Constitution requires a live controversy at all stages in the litigation. That requirement was not met.

## Conclusion

The petition should be granted. This Court should issue a writ directing the district court to vacate its March 24, 2026 order insofar as it held that GBB regained standing and that its claims were not moot. This Court should require the district court to dismiss GBB's claims without prejudice for lack of subject matter jurisdiction.

Respectfully submitted,

*/s/ Jeffrey S. Beelaert*
Jeffrey S. Beelaert
GIVENS PURSLEY LLP
601 West Bannock Street
Boise, Idaho 83701
(208) 388-1200

*Counsel for Petitioners*

June 15, 2026

34

## Certificate of Compliance

I certify that this petition complies with the word limit set forth in Federal Rule of Appellate Procedure 21(d)(1) because, excluding the parts of the brief exempted by Rule 32(f), this brief contains 7,767 words.

I further certify that this brief complies with the typeface requirements set forth in Rule 32(a)(5)(A) and with the type-style requirements set forth in Rule 32(a)(6) because it has been prepared using 14-point Century Schoolbook font in Microsoft Word.

*/s/ Jeffrey S. Beelaert*
Jeffrey S. Beelaert

35